STATE v. BRIAN F. LaBARRE.

195 N. W. 2d 435.

February 4, 1972—No. 42693.

---

[2] See, Annotations, 46 A. L. R. 2d 1216, 1219; 26 A. L. R. 3d 561, 574.

*Robins, Meshbesher, Singer & Spence* and *Ronald I. Meshbesher,* for appellant.

*Warren Spannaus,* Attorney General, *George M. Scott,* County Attorney, and *Henry W. McCarr, Jr.* and *David G. Roston,* Assistant County Attorneys, for respondent.

Heard before Knutson, C. J., and Murphy, Otis, Rogosheske, and Hachey, JJ.

ROGOSHESKE, JUSTICE.

Defendant, Brian F. LaBarre, was found guilty by a jury of two counts of unlawful possession of narcotics, namely, cocaine and hashish, and one count of unlawful possession of a prohibited drug, d-lysergic acid diethylamide (LSD), in violation of Minn. St. cc. 618 and 152, respectively. On this appeal from the judgment of conviction and from the denial of a motion for a new trial, defendant principally challenges the constitutional validity of a search warrant, the execution of which resulted in the seizure of incriminating evidence including a large quantity of drugs. He also claims that the evidence was insufficient to sustain the jury's verdict. We find no constitutional defect in the issuance of the search warrant and ample evidence to sustain defendant's conviction on all counts.

At approximately 6:30 a. m. on November 20, 1969, a Minneapolis narcotics officer on duty at the Minneapolis-St. Paul

International Airport observed defendant arrive on a Western Airlines flight from California. Following him, he saw defendant proceed to the luggage area and retrieve a small suitcase and then meet a man and woman, with whom he conversed and with whom he left the airport by cab. The police later that day learned from the cab company that the defendant and his companions were let off in front of an apartment building at 719 Fifth Avenue Southeast, Minneapolis, where the three individuals walked along the side of the apartment building to the rear.

That same day the police applied for a search warrant. Based on an enforcement officer's affidavit in support of the search warrant, the magistrate found probable cause and issued the warrant authorizing a night search of the third floor of the premises at 719 Fifth Avenue Southeast and a search of the person of defendant.[1]

---

[1] The affidavit of the police officer recited: "That he has reason to believe, and does believe, that (on the person of) (on the premises known as) 719 5th Ave. S.E., third floor and the person of Brian La-Barre in the City of Minneapolis, Hennepin County, there is now being concealed certain property, namely: Narcotic drugs, including opium and its derivatives, cocaine, synthetic narcotics, marijuana, amphetamines, barbiturates, hypodermic needles, and syringes and other narcotic paraphernalia * * *.

\* \* \* \* \*

"That the facts tending to establish the foregoing grounds for issuance of a search warrant are as follows: Detective George Bendt while at the Metropolitan Airport on 11/20/69 and while engaged on police business saw a party by the name of Brian LaBarre getting off a Western Airlines plane. LaBarre is known to Det. Bendt and presently has a case pending in court for possession of hashish and at the time of his arrest, he had 32 ounces of hashish in his possession. While at the baggage checkout, Det. Bendt saw LaBarre pick up a small suitcase. He was then joined by a young female and another male. The female had a large suitcase and a hatbox in her possession. The other male had two large suitcases in his possession. They conversed with one another and all three later left together in a yellow cab. When departing from the airplane all three parties walked separately from one another to the baggage department. LaBarre is a known drug peddler and makes trips

At about 10:30 p. m. the same evening, the police went to the rear of the premises described in the warrant and climbed the stairway to the third floor apartment. They knocked, tried the door and found it open, entered into what was the kitchen, and shouted something to the effect that the police were there with a search warrant. The officers then continued through the apartment and found Gerald Huisman, a woman, and two other men in the rear bedroom, where marijuana could be seen in open view The defendant was not in the apartment. The search warrant was presented to Huisman, who admitted he lived there, and a Miranda warning was read to all the parties. A search of the apartment was completed, and an inventory of the articles seized was contemporaneously prepared.[2]

---

via Western Airlines from California to pick up a supply. Upon checking with the Yellow Cab Company, it was learned that the three parties were led [sic] off at 719 5th Ave. S.E. The driver of the cab stated that the three parties walked along the side of the house towards the rear. A reliable informant who [sic] information has resulted in arrests of narcotic sellers in the past, has seen narcotics and drugs on the premises within the last 24 hours.

"That a night time search is necessary to prevent the loss, destruction or removal of the objects of the search, in that narcotic drugs are present at 719 5th Ave. S.E. at the present time and can be moved at any time."

[2] An inventory made following the search reveals that the articles seized were: "7 bricks of suspected marijuana from front bedroom chest of drawer by W.B.

. "1 lid of suspected marijuana from top of chest in center bedroom by **R.A.J.**

"1 brown attache case and key from front bedroom chest of drawer which 3 lids suspected marijuana, 3 lids of seeds, one piece suspected hash and two rolls of exposed black and white film by W.B.

"1 ladies purse with anacin box of pills and ID of Kathleen Beebe by J.F.

"1 piece of white paper with notations of costs of drugs from center bedroom chest, R.A.J.

"1 brown paper bag containing 11 lids of suspected marijuana from center bedroom by V.B.

Critical to the three counts of possession alleged in the information against defendant were the following items taken from the front bedroom: From the closet, men's jeans containing a billfold in which there was found $480, papers identifying defendant, and two packets containing cocaine; from beneath a dresser, 7 kilos of marijuana and an attache case containing hashish, marijuana, and marijuana seeds; and from the dresser,

"1 piece of suspected opium from kitchen table by R.A.J.

"1 green plastic box containing piece of hashish from center bedroom by R.A.J. and W.B.

"1 small carved jewelry box containing suspected hash from front bedroom by W.R.L.

"1 Hills Brothers coffee can containing suspected marijuana by W.R.L.

"1 gray, metal strong box containing 6 lids suspected marijuana and 1 large bag suspected marijuana and personal belongings of Gerald Huisman as follows: order of driver's license suspension, two letters from attorneys, a plastic check case in the name of Gerald Huisman, folder of school records of Gerald Huisman and 6 personal letters Gerald Huisman, W-2 forms of Gerald Huisman.

"1 plastic bag containing several lids and bags suspected marijuana and a container of suspected morphine pills in a plastic bag containing several red capsules from front bedroom dresser by W.B.

"1 plastic bag containing several lids of marijuana from front bedroom by W.B.

"1 cardboard barrel containing two plastic bags marijuana and ladies clothes by R.J.K.

"$245 cash from person of Gerald Huisman by W.B.

"$480 in cash from wallet, identification of Brian LaBarre and a foil pack containing white powder and a white paper pack containing white powder items of identification, a Dayton's and Donaldson's credit cards in name of Brian LaBarre, library card name of Brian LaBarre.

"additional identification from wallet of Brian LaBarre.

"Red receipt in name of LaBarre date 9-17-69.

"Money order receipt name Brian LaBarre.

"Post Office receipt name of Brian LaBarre dated 11-14-69 address of 719 5th Avenue S.E.

"Post Office receipt name of Brian LaBarre dated 11-16-69 address to 719 5th Ave. S.E.

"Wallet found in pants pocket by W. Brademan."

d-lysergic acid diethylamide (LSD) tablets in a plastic container.

Two officers testified that, during the search of the apartment, several individuals were heard coming up the open rear stairway. Two officers went to the rear kitchen doorway and observed and recognized defendant, who fled when one of the officers shouted, "Hold it." Further testimony at trial established that on his arrival in Minneapolis, defendant went to the third floor apartment that morning; that the apartment was his Minneapolis residence and was used as his mailing address; that he used the front bedroom when he stayed in Minneapolis and kept clothing there; and that he considered Huisman as his roommate.

At the Rasmussen hearing, defendant moved to suppress all articles obtained at the apartment on the grounds that none was shown to be in defendant's care, custody, and control at any time and also because there was no probable cause to issue this particular warrant. This motion was denied.

The determinative issue on appeal is whether the enforcement officer's affidavit provided a sufficient basis for an independent determination by a neutral magistrate that probable cause existed for the issuance of the search warrant. It is now firmly established that the constitutional standards embodied in U. S. Const. Amend. IV and Minn. Const. art. 1, § 10, require (1) that the determination of whether probable cause exists to authorize a search be made by a "neutral and detached magistrate" and not by the police officer engaged in "ferreting out crime," Johnson v. United States, 333 U. S. 10, 14, 68 S. Ct. 367, 369, 92 L. ed. 436, 440 (1948);[3] (2) that in making such determination the magistrate, as well as a reviewing court, is restricted to consider only the information presented at the time of the application for the search warrant, Aguilar v. Texas, 378 U. S. 108, 84 S. Ct.

---

[3] Coolidge v. New Hampshire, 403 U. S. 443, 91 S. Ct. 2022, 29 L. ed. 2d 564 (1971); State v. Burch, 284 Minn. 300, 305, 170 N. W. 2d 543, 548 (1969).

1509, 12 L. ed. 2d 723 (1964);[4] and (3) that the affidavits for the search warrant "must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion." United States v. Ventresca, 380 U. S. 102, 108, 85 S. Ct. 741, 746, 13 L. ed. 2d 684, 689 (1965).

In essence, the affidavit upon which the warrant was issued, reproduced in full in the margin, stated that the officer observed or knew that:

(1) Defendant, whom the narcotics officer knew, got off a Western Airlines plane;

(2) Defendant went alone to the baggage checkout, where he picked up a small bag;

(3) Defendant was joined by a woman with a suitcase and a hatbox and by a man with two large suitcases;

(4) The three left in a Yellow Cab together;

(5) The three were let off at 719 Fifth Avenue S. E. and walked along the side of the building toward the rear;

(6) Defendant previously had been arrested for possession of 32 ounces of hashish;

(7) Defendant is a known drug peddler and makes trips via Western Airlines from California to pick up supplies; and

(8) Narcotics and drugs had been seen on the premises within the past 24 hours by an informant whose information was believed to be reliable because it had resulted in arrests of narcotics sellers in the past.

Applying constitutional standards, the recited circumstances of the arrival of defendant in Minnesota viewed alone reflect only "innocent-seeming activity and data" found of questionable value in determining probable cause in Spinelli v. United States, 393 U. S. 410, 414, 89 S. Ct. 584, 588, 21 L. ed. 2d 637, 642 (1969). Although such information, coupled with the allegations of defendant's arrest for a prior similar offense and his reputation

---

[4] Giordenello v. United States, 357 U. S. 480, 78 S. Ct. 1245, 2 L. ed. 2d 1503 (1958); Spinelli v. United States, 393 U. S. 410, 89 S. Ct. 584, 21 L. ed. 2d 637 (1969).

as a known trafficker in illegal drugs, may now be sufficient to justify a search of defendant's person, United States v. Harris, 403 U. S. 573, 91 S. Ct. 2075, 29 L. ed. 2d 723 (1971), it must be recognized, as defendant vigorously argues, that such a showing is of doubtful sufficiency to justify an intrusion into the privacy of a dwelling unless the information supplied by the unidentified informant can be credited by the magistrate. Where the affidavit primarily rests on information supplied by an unidentified informant, such out-of-court, hearsay police tip can support a finding of probable cause if the affidavit contains the underlying facts and circumstances to enable the magistrate to independently judge (1) that the informant obtained his knowledge of the reported criminal activity in a reliable manner; and (2) that the officer-affiant had a sufficient basis to believe that the informant was "credible" or his information "reliable." Aguilar v. Texas, *supra;* State v. Burch, 284 Minn. 300, 170 N. W. 2d 543 (1969); State ex rel. Duhn v. Tahash, 275 Minn. 377, 147 N. W. 2d 382 (1966). In the recent case of United States v. Harris, *supra,* the affidavit[5] was found to have the requisite factual

---

[5] The affidavit in support of the search warrant in United States v. Harris, 403 U. S. 573, 575, 91 S. Ct. 2075, 2078, 29 L. ed. 2d 723, 729 (1971) contained the following recital:

"Roosevelt Harris has had a reputation with me for over 4 years as being a trafficker of nontaxpaid distilled spirits, and over this period I have received numerous information [sic] from all types of persons as to his activities. Constable Howard Johnson located a sizeable stash of illicit whiskey in an abandoned house under Harris' control during this period of time. This date, I have received information from a person who fears for their [sic] life and property should their name be revealed. I have interviewed this person, found this person to be a prudent person, and have, under a sworn verbal statement, gained the following information: This person has personal knowledge of and has purchased illicit whiskey from within the residence described, for a period of more than 2 years, and most recently within the past 2 weeks, has knowledge of a person who purchased illicit whiskey within the past two days from the house, has personal knowledge that the illicit whiskey is consumed by purchasers in the outbuilding known and

basis because (1) the observations were personal and recent; (2) the affiant alleged that he had knowledge of prior criminal conduct on the part of the defendant and recited a previous event in support of such allegation; and (3) the informant's credibility was enhanced because the information was an admission against the informant's own penal interest.

Under the rationale of Harris, we cannot agree with defendant's reliance on Spinelli and Aguilar as support for his argument that the affidavit here merely asserts belief or suspicion that contraband was present in the third-floor apartment. Unlike Spinelli, the recent personal visual observation of the informant explained how he came by his information that drugs were in the third-floor apartment. United States v. Harris, *supra;* Jones v. United States, 362 U. S. 257, 80 S. Ct. 725, 4 L. ed. 2d 697 (1960). While in Harris the informant had purchased the contraband—making his admission self-incriminating and thus contributing to the credibility of the informant—the fact explaining how the informant came by his information need not necessarily be self-incriminating under Harris. The informant's credibility is here supported by the officer's disclosure that the informant has given correct information which has led to arrests of narcotics sellers in the past.[6]

Ignoring, then, those elements of the affidavit which go to seeming-innocent conduct, the affidavit here, measured by the standards of Harris, was in our view sufficient to justify the magistrate in finding a substantial basis for crediting the tip of the informant. Accordingly, we hold that the magistrate properly found probable cause to issue the warrant.

---

utilized as the 'dance hall,' and has seen Roosevelt Harris go to the other outbuilding, located about 50 yards from the residence, on numerous occasions, to obtain the whiskey for this person and other persons."

[6] Such an averment can enhance credibility under Jones v. United States, 362 U. S. 257, 80 S. Ct. 725, 4 L. ed. 2d 697 (1960), even though it alone is not to be given significant weight under United States v. Harris, *supra.*

Upon a careful reading of the transcript, we have no hesitancy in holding that there is ample evidence to support defendant's conviction of possession of narcotics on all three counts. With due regard to the presumption of innocence, the evidence, including defendant's own admissions, justified the jury in finding that he exercised knowing dominion and control over and, either singly or with others, had immediate and accessible possession of the cocaine, hashish, and LSD found in the front bedroom. State v. Bagley, 286 Minn. 180, 175 N. W. 2d 448 (1970); United States v. Bridges, 419 F. 2d 963 (8 Cir. 1969).

Defendant's contentions with respect to the scope of the search and the justification for a nighttime search in view of the requirements of Minn. St. 626.14[7] are raised for the first time on appeal. These issues are not properly presented under soundly based and settled rules limiting our scope of review to issues raised at trial. State v. Taylor, 270 Minn. 333, 133 N. W. 2d 828 (1965).[8] We nevertheless observe that upon this record neither claim has sufficient merit to establish a manifest denial of any of defendant's rights.

Affirmed.

MR. JUSTICE TODD, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

---

[7] Minn. St. 626.14 provides: "A search warrant may be served only in the daytime unless the court or justice of the peace determines on the basis of facts stated in the affidavits that a nighttime search is necessary to prevent the loss, destruction, or removal of the objects of the search. The search warrant shall state that it may be served only in the daytime unless a nighttime search is so authorized."

[8] See, also, State v. Pearson, 153 Minn. 32, 189 N. W. 404 (1922).