135 N.J. Super. 240 (1975)
343 A.2d 118
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
HERBERT GAINES, JR., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted January 6, 1975.
Decided July 8, 1975.
*242 Before Judges MICHELS, MORGAN and MILMED.
Mr. Stanley C. Van Ness, Public Defender, attorney for appellant (Mr. Jasper J. Jackson, Assistant Deputy Public Defender, of counsel and on the brief).
Mr. William F. Hyland, Attorney General of New Jersey, attorney for respondent (Mr. Joseph J. Rodgers, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Defendant and six others were charged with possession of a controlled dangerous substance, to wit, heroin, in violation of N.J.S.A. 24:21-20. Defendant's motion to suppress evidence uncovered as a result of a warranted search was denied. Defendant and one other (codefendant Oreanne Williams) were found guilty by a jury. Defendant was sentenced to the Youth Correctional Institution Complex to be transported to the Youth Reception and Correction Center at Yardville for an indeterminate term.[1] Defendant appeals.
The State's proofs established that on January 27, 1973 Sergeant DiBiano and six other uniformed officers of the Asbury Park Police Department went to an apartment located at 1217 Springwood Avenue in Asbury Park for the purpose *243 of executing a search warrant. The apartment was leased by Katherine Ellis. As they approached the apartment Artee Roberta Watkins pulled the door shut. When Ms. Watkins refused to open the door Sergeant DiBiano was forced to break the glass window and open the door in order to gain entry to the apartment. Upon entering DiBiano observed defendant run into the bathroom and close the door. DiBiano followed defendant into the bathroom and found him lying fully clothed and face down in the bathtub. When defendant stood up DiBiano observed two glassine envelopes containing a white powdery substance in the bathtub. Subsequent analysis of the envelopes established that the substance contained therein was starch, not heroin.
Meanwhile, Officer Elliott, who had entered the apartment with Sergeant DiBiano, went to the kitchen area where he observed Oreanne Williams, who was with Ms. Ellis, throw a purse out the window. The purse was retrieved and found to contain narcotic paraphernalia. Detective Wheary observed Eugene Jennings near the area of the kitchen, Sylvester Ellis sitting on a bed and Daniel Johnson standing near him.
An immediate search of the 1 1/2-room apartment by the police officers disclosed 16 glassine envelopes near a window located in the living room, 21 glassine envelopes in the waste basket in the living room, and a plastic bag containing syringes, needles and bottle caps on top of the refrigerator in the kitchen area. Analysis of 5 of the 16 envelopes and 10 of the 21 envelopes established that the substance contained therein was heroin. Upon analysis, the syringes, needles and bottle caps also revealed traces of heroin.
On his motion to suppress the evidence seized pursuant to the aforementioned search warrant, defendant challenged the affidavit which was submitted in support of the application for the warrant. The affidavit averred that Sergeant DiBiano and Detective Wheary received information from an informant who had "provided reliable information in the past" that two females known as Katherine Ellis and Marie Ellis and a male known as "Kenny" were selling heroin *244 from apartment "N" at 1217 Springwood Avenue in Asbury Park, New Jersey. The affidavit further disclosed that DiBiano was subsequently informed by an investigator in the Monmouth County Prosecutor's Office that a male known as "Kenny" was selling heroin from this apartment, and that a check of the records of the Asbury Park Police Department revealed that Marie Ellis had previously been arrested for the possession and sale of heroin. The affidavit also indicated that DiBiano and Wheary made a surveillance of the described premises for about an hour and a half, during which time four persons, all of whom had arrest records for either the possession or sale of narcotic drugs, were observed entering the apartment.
Defendant contends that the trial judge erred in denying his motion to suppress the evidence seized pursuant to the search warrant, arguing that the supporting affidavit provided an insufficient basis for its issuance. We disagree.
The reliability of the informant is adequately vouched for by the statement that he had "provided reliable information in the past." State v. Ebron, 61 N.J. 207, 212 (1972). Reliable past performance on the part of an informant is an index to present reliability. State v. Perry, 59 N.J. 383, 390 (1971). Moreover, the accumulation of information from an investigator in the Monmouth County Prosecutor's Office, the records of the Asbury Park Police Department and the surveillance conducted by the applying police officers assures that none of the information contained in the affidavit stemmed from irresponsible rumor or conjecture.
It is well settled that police officers' statements made in affidavit form to support the issuance of a search warrant should be tested and interpreted by the court "in a common sense way without a grudging or negative attitude." State v. Kasabucki, 52 N.J. 110, 117 (1968); State v. Kurland, 130 N.J. Super. 110, 113 (1974). Once the judge has made a finding of probable cause on the proofs submitted and issued the search warrant, a reviewing court should give substantial *245 deference to his determination. State v. Perry, supra, 59 N.J. at 393; State v. Kasabucki, supra, 52 N.J. at 120; State v. Kurland, supra, 130 N.J. at 114. Even assuming that the validity of the affidavit is in doubt, "the resolution of doubtful or marginal cases in this area should be largely determined by the privilege to be accorded to warrants." United States v. Ventresca, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684, 689 (1965); State v. Perry, supra, 59 N.J. at 394.
In the light of this positive, common sense approach, we are satisfied that the information obtained from the informant was reliable and, coupled with the other information contained in the affidavit, was enough to "permit the suspicions engendered by the informant's report to ripen into a judgment that a crime was probably being committed." Spinelli v. United States, 393 U.S. 410, 418, 89 S.Ct. 584, 590, 21 L.Ed.2d 637, 645 (1969); State v. Ebron, supra. Accordingly, the motion to suppress the evidence obtained during the search of Ellis' apartment pursuant to a search warrant was properly denied.
We also find no merit in defendant's claim that the State failed to prove that "he exercised actual or constructive dominion and control over the heroin found in the Ellis apartment"  an essential element of the crime charged  and that the trial judge therefore erred in denying his motion for judgment of acquittal at the end of the State's case.
N.J.S.A. 24:21-20 provides that it is "unlawful for any person, knowingly or intentionally * * * to possess, actually or constructively, a controlled dangerous substance." The unqualified term "possess," as used in this as well as other criminal statutes, signifies an intentional control and dominion of a designated article accompanied by knowledge of its character. See State v. Reed, 34 N.J. 554, 557 (1961); State v. Labato, 7 N.J. 137, 148 (1951); State v. Reyes, 98 N.J. Super. 506, 512 (App. Div. 1968), certif. den. 51 N.J. 582 (1968). See also State v. Humphreys, 54 N.J. 406, *246 413-414 (1969). Actual physical manual control of the article is not required if the intention to exercise dominion and control over the object is manifested in circumstances where it is reasonable to infer that the capacity to do so exists. State v. Rajnai, 132 N.J. Super. 530, 536 (App. Div. 1975); State v. Bozeyowski, 77 N.J. Super. 49, 51 (App. Div. 1962), cert. den. 374 U.S. 851, 83 S.Ct. 1916, 10 L.Ed.2d 1071 (1963); State v. Brown, 67 N.J. Super. 450 455 (App. Div. 1961); State v. Campisi, 42 N.J. Super. 138, 145 (App. Div. 1956), rev'd on other grounds 23 N.J. 513 (1957).
While the mere presence of defendant and others in the Ellis apartment may have been alone insufficient to establish either actual or constructive possession of the heroin found in the apartment (see State v. Serrano, 53 N.J. 356, 359-360 (1969); United States v. Vilhotti, 452 F.2d 1186, 1188-89 (2 Cir.1971), cert. den. 406 U.S. 947, 92 S.Ct. 2051, 32 L.Ed.2d 335 (1972)), evidence of the other circumstances was sufficient for a jury to find that defendant exercised dominion and control over the heroin beyond a reasonable doubt.
During their hour and a half surveillance the police observed four known drug offenders enter the apartment. When the police finally forced their way into the apartment they saw defendant fleeing to a bathroom in an obvious attempt to escape detection. Further search of the apartment revealed the presence of 36 glassine envelopes of heroin as well as other narcotic paraphernalia. In these circumstances defendant's conduct clearly evinced a consciousness of guilt not only with respect to the glassine envelopes he attempted to secrete but with respect to the heroin in the apartment as well. A jury could, therefore, conclude that defendant was guilty of possession of heroin. See State v. Bozeyowski, supra, 77 N.J. Super. at 58. See also, State v. Leak, 128 N.J. Super. 212, 216-217 (App. Div. 1974), certif. den. 65 N.J. 565 (1974); State v. Petrolia, 45 N.J. Super. 230, 233 (App. Div. 1957), certif. den. 25 N.J. 43 (1957), cert. den. *247 355 U.S. 942, 78 S.Ct. 431, 2 L.Ed.2d 422 (1958); Wigmore, Evidence (3 ed. 1940), § 276 at 111-119. Cf. State v. Bailey, 97 N.J. Super. 396, 405 (App. Div. 1967).
The result we reach here is supported in principle by State v. Hull, 15 Ariz. App. 134, 486 P.2d 814 (1971), wherein the Arizona Court of Appeals affirmed defendant's conviction for possession of marijuana under somewhat similar circumstances, stating:
* * * Here, there was testimony of rapid activity within the apartment, including the flushing of a toilet and running water within the two-minute interval before defendant admitted the police officers. There was also expert testimony to the effect that there was an odor in the apartment of burned marijuana. We hold that the combined effect of all the evidence presented was sufficient to "link the defendant to the [marijuana] in such a manner and to such an extent that a reasonable inference may arise that the defendant knew of the [marijuana's] existence and of its whereabouts," * * *. [486 P.2d at 815]
In Guthrey v. State, 507 P.2d 556, 560-561 (1973), the Oklahoma Court of Criminal Appeals found the additional factor necessary to establish knowledge and control of the narcotic drug from the fact that defendant slammed the door to the bathroom and attempted to flush the syringe and needle down the commode when the officer entered the premises. See also, State v. LaBarre, 292 Minn. 228, 195 N.W.2d 435 (Sup. Ct. 1972).
The standard to be applied in determining a motion for judgment of acquittal under R. 3:18-1 at the conclusion of the State's case is set forth in State v. Reyes, 50 N.J. 454 (1967), as follows:
[T]he broad test for determination of such an application is whether the evidence at that point is sufficient to warrant a conviction of the charge involved. R.R. 3:7-6. More specifically, the question the trial judge must determine is whether, viewing the State's evidence in its entirety, be that evidence direct or circumstantial, and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, a jury could find guilt of the charge beyond a reasonable doubt. * * * [at 458-459]
*248 The obligation of this court in reviewing the determination of such a motion by the trial court is to consider the State's proofs in the light of the foregoing standard and to determine therefrom how the motion should have been decided. State v. Reyes, supra; State v. Moffa, 42 N.J. 258, 263 (1964). In our determination no consideration has been given to any evidence or reasonable inferences to be drawn therefrom adduced on defendant's case. See State v. Reyes, supra; State v. Fiorello, 36 N.J. 80, 86-91 (1961), cert. den. 368 U.S. 967, 82 S.Ct. 439, 7 L.Ed.2d 396 (1962).
We are convinced that, considered in a light most favorable to the State, the evidence at the end of its case and the logical inferences to be drawn therefrom were sufficient for a jury to find defendant guilty of possession of heroin beyond a reasonable doubt. Accordingly, the trial judge properly denied defendant's motion for a judgment of acquittal at the end of the State's case.
For the foregoing reasons, the judgment of conviction is affirmed.
MORGAN, J.A.D. (dissenting).
I am constrained to dissent from my colleagues with respect to the conclusion reached as to the sufficiency of the State's case.
The evidence is undisputed that defendant was not a tenant or permanent occupant of the apartment in which the heroin was found. At best, he was a visitor to the apartment who had been there for approximately 1 1/2 hours before the entry of the police. There was no evidence indicating that defendant had any other or a prior connection with the premises.
A conviction for possession of illicit drugs may, of course, be predicated upon circumstantial evidence. Such a conviction may be based upon evidence demonstrating constructive, rather than actual possession. State v. Campisi, 42 N.J. Super. 138 (App. Div. 1956), rev. in part, dism. in part *249 23 N.J. 513, 516 (1957). Evidence of joint as well as exclusive possession may support such a conviction.
Where, however, defendant is one of several persons found on premises where illicit drugs are discovered, it may not be inferred that he knew of the presence or had control of the drugs unless there are other circumstances or statements of defendant tending to permit such an inference to be drawn. Although there exists no New Jersey case directly in point,[1] research has disclosed a number of recent cases from several other jurisdictions so holding. In People v. Mosley, 131 Ill. App.2d 722, 265 N.E.2d 889 (Ill. App. 1971), the court held that discovery of marijuana in the trunk of a car in which defendant was a passenger was not sufficient to establish defendant's possession thereof. In Commonwealth v. Florida, 441 Pa. 534, 272 A.2d 476 (Sup. Ct. 1971), the court held that guests at a party could not be convicted of possession because a jar containing marijuana and four butts in an ashtray were found on the premises when no marijuana was found on any of defendants. Mere proof of the defendants' presence at the party with an opportunity to use or possess marijuana was considered insufficient to convict. In State v. Haynes, 25 Ohio St.2d 264, 267 N.E.2d 787 (Sup. Ct. 1970), the court held that where the only evidence of possession is the police discovery of narcotics in the general living area of the apartment occupied by defendant and four others, such evidence is not sufficient to convict for possession. See also, Brown v. State, 481 P.2d 475 (Okl. Cr. 1971); Commonwealth v. Schuloff, 218 Pa. Super. 209, 275 A.2d 835 (Sup. Ct. 1971); Langdon v. State, 235 So.2d 321 (Fla. App. 1970).
Defendant was not a possessor of the premises and hence the law concerning the possible guilt of one enjoying non-exclusive *250 possession of premises where drugs have been found has no application to this case. In State v. LaBarre, 292 Minn. 228, 195 N.W.2d 435 (Sup. Ct. 1972), defendant was in possession of the premises, although on a non-exclusive basis. He shared with another the bedroom in which the drugs were discovered. His act, then, of fleeing from the police when he encountered them searching the apartment provided strong circumstantial evidence that the drugs found belonged to him. Again, in Guthrey v. State, 507 P.2d 556 (Okl. Crim. App. 1973), cited in the majority opinion, a factual question concerning defendant's occupancy of the apartment in question was raised. It was, however, undisputed that he had been in exclusive possession of the premises until approximately two weeks before the search. In these circumstances his attempt to dispose of a syringe and needle in the toilet provided strong circumstantial evidence of guilt.
Here defendant was but a casual visitor to the premises. There is no indication that he had ever been in the apartment prior to the date of the search. Moreover, the record is bare of evidence as to the location of the heroin before the search. It is entirely possible that, before the police entered, it was in the actual and concealed possession of one or more of the codefendants. There is nothing to suggest that the contents of the plastic bag containing narcotic paraphernalia found on top of the refrigerator would have been apparent to the casual visitor. Thus, there exists no direct evidence that defendant could even have known that the heroin was in the apartment.
The opinion of the court, however, places principal, indeed exclusive reliance, upon defendant's conduct of fleeing into the bathroom upon the police entry, as permitting an inference of consciousness of guilt sufficient to support the conviction. The conduct referred to was not, however, simply flight to the bathroom in an attempt to hide from the police, but flight with two bags of starch which defendant made an attempt to conceal. One cannot limit consideration to one aspect of the flight, without considering all aspects of that *251 conduct. While the evidence of flight is certainly sufficient to permit an inference that the defendant possessed the starch which he was at such great pains to conceal, it does not, in my view, permit an inference that he also possessed the other heroin found in the apartment which he made no attempt to conceal. As noted in the case of State v. DiRienzo, 53 N.J. 360, 376 (1969), a jury may be permitted to draw an inference if it is "more likely than not that the facts proven point to the fact inferred." The two facts upon which the conviction rests, defendant's fortuitous and casual presence in the apartment for an hour and a half, together with flight into the bathroom with two bags of starch upon entry of the police, do not make it "more likely than not" that defendant possessed the heroin found in the apartment, particularly in the absence of any evidence that he knew, or even could have known, of its presence before the police entered.
One may suspect that defendant's presence in an apartment containing substantial amounts of heroin bespeaks knowledge of its presence or an intention to participate in its use. Mere suspicion is, however, not enough to sustain a conviction. In any event, it is not unlawful to be in an apartment where illicit drugs are found, even were it to be shown that an accused knew that the drugs were present. Commonwealth v. Tine, 221 Pa. Super. 318, 292 A.2d 483 (Super. Ct. 1972). Even where defendant was a colessee of an apartment in which drugs were found in the presence of four other people, the evidence was held insufficient to convict the colessee. Commonwealth v. Schuloff, supra. In this case, however, there was no proof that defendant knew, or could have known, of the presence of the drugs. The sole issue presented to the trial judge on the motion for acquittal at the end of the State's case was whether the State had presented sufficient evidence from which a jury could infer that the defendant possessed the heroin found in the apartment *252 beyond a reasonable doubt. In my view, the evidence presented fell far short of that standard.
I would reverse the trial judge's denial of defendant's motion for acquittal at the end of the State's case.
NOTES
[1] Two other codefendants Sylvester Ellis and Daniel Johnson, pleaded guilty prior to trial. The three remaining defendants, Katherine Ellis, Eugene Jennings and Artee Roberta Watkins, were found not guilty.
[1] But see, State v. Serrano, 53 N.J. 356, 360 (1969), wherein a conviction of receiving a stolen car was reversed where it was shown the defendant as passenger was not in possession thereof and could not therefore be regarded as a receiver notwithstanding defendant's flight from the vehicle when it was stopped by the police.