**COMMISSIONER OF REVENUE,**
**Relator,**

v.

**Elena FORT, Respondent.**

**No. C4-91-546.**

Supreme Court of Minnesota.

Jan. 3, 1992.

Hubert H. Humphrey, III, Atty. Gen., Kurt J. Erickson, Sp. Asst. Atty. Gen., Tax Litigation Div., for appellant.

Ann Iijima, William Mitchell College of Law, St. Paul, for respondent.

YETKA, Justice.

The Commissioner of Revenue appeals from a Minnesota Tax Court summary judgment order that respondent is not liable for the controlled substance tax and penalty assessed against her. We affirm the tax court.

In October 1989, the Hennepin County Sheriff's Department executed a search warrant on the apartment where respondent and her husband, Richard Fort, lived. The search warrant and supporting affidavit identified respondent's husband as the individual suspected of dealing and possessing controlled substances. During the search, officers found over 27 grams of

cocaine in the headboard compartment of the bed in which respondent and her husband slept.

Upon finding the cocaine in the bedroom, the law enforcement officers placed Richard Fort under arrest and read him his *Miranda* rights. Respondent was not arrested. Richard Fort waived his right to an attorney and spoke to the arresting officers. The Hennepin County Sheriff's Department investigative report of Mr. Fort's statements reads in relevant part as follows:

> Richard Fort stated that the powder found in the bedroom area of the residence was cocaine and was all his. He stated that his wife had nothing to do with any of it. Richard stated that he had worked at Phillips Tempro but was laid off approximately one month ago. Richard stated that he traded the cocaine for tar heroin and that he used approximately one gram a day of heroin for his personal use. I asked Richard if he would cooperate with the police on putting a case on his cocaine source and he stated that at this point he would not. He stated that he was admitting all the cocaine found was his but that would be all he could do for us.

Mrs. Fort, respondent here, was never charged or convicted of any crime. However, on February 7, 1990, pursuant to Minn.Stat. §§ 297D.08, .09 (1990), the commissioner assessed $5,400 in taxes on controlled substances and an additional $5,400 in penalties against both respondent and her husband.[1] In May 1990, respondent and Mr. Fort filed a joint notice of appeal, denying liability for the tax and penalty on the ground that Mr. Fort was not a "dealer." Shortly thereafter, it became apparent that respondent needed separate counsel from that of her husband because of differences in their positions. Respondent

moved to substitute and obtained her present counsel. The commissioner subsequently moved for and obtained a dismissal of Mr. Fort's appeal based on his admissions of possession following his arrest and in his appeal. Judgment was entered against Mr. Fort for $10,800 on August 21, 1990.

Following the entry of judgment against respondent's husband, the commissioner served respondent with numerous discovery requests, including interrogatories, document requests, requests for admissions, and requests for production of statements concerning respondent's alleged possession of the cocaine. Respondent refused to answer any of the discovery requests, invoking her privileges against self-incrimination under the Minnesota and United States Constitutions.[2]

On December 18, 1990, the tax court denied the commissioner's motion for judgment on the pleadings or dismissal. The court also granted respondent's motions to amend her notice of appeal and to proceed *in forma pauperis*. However, the court ruled that the respondent had improperly invoked the self-incrimination privilege in response to the commissioner's request for admissions because there was no threat of criminal prosecution from those admissions: Under Rule 36.02 of the Minnesota Rules of Civil Procedure, a response to a request for admissions may not be used against that party in any other proceeding. Accordingly, the court allowed respondent to amend her responses to the commissioner's request for admissions. Finally, the court deferred decision on the parties' cross motions for summary judgment until pending discovery was complete.

Respondent amended and served her responses to the commissioner's requests for admissions on December 27, 1990. Respon-

---

**1.** Minn.Stat. § 297D.08 reads in relevant part: "A tax is imposed on marijuana and controlled substances * * * at the following rates: * * * (2) on each gram of controlled substance, or each portion of a gram, $200."

In addition, Minn.Stat. § 297D.09, subd. 1 provides that "[a]ny dealer violating this chapter is subject to a penalty of 100 percent of the tax in addition to the tax imposed by section

297D.08. The penalty will be collected as part of the tax."

**2.** The commissioner does not dispute respondent's right to assert the privilege or that she properly asserted it in this civil case; rather, the issue is the effect of that assertion on the motions for summary judgment.

dent answered fully or objected to, on other grounds, each of the requests in the amended responses. However, she reasserted her privilege against self-incrimination as a precautionary measure to preserve both the privilege and her objections. Respondent's answers to the other discovery requests remained unchanged (*i.e.,* her self-incrimination objections remained).

The tax court heard the parties' cross motions for summary judgment on January 22, 1991. The commissioner argued that respondent's assertion of the privilege against self-incrimination in her discovery responses entitled the commissioner to summary judgment. The commissioner claimed that respondent's invocation of the privilege in her answers to interrogatories and document requests was substantive "evidence indicating that in fact she possessed the controlled substances in question." Finally, the commissioner argued that the commissioner was entitled to judgment as a matter of law because the assertion of the privilege in a civil proceeding creates an adverse inference against the party invoking it.

As a preliminary matter, the respondent replied that she had answered fully the requests for admissions following the tax court's order of December 18, 1990. Respondent's renewed assertion of the privilege was meant only to preserve it in the record. Respondent also argued that the commissioner had waived objections to the other discovery requests by failing (1) to serve a notice of a hearing on his objections in the case of the interrogatories under Minn.R.Civ.P. 33.01(c) or (2) to move for an order compelling discovery with respect to the production of documents and statements under Minn.R.Civ.P. 37.01(a)–(d).

**3.** The police reports indicated that two marijuana pipes and syringes were found in the apartment.

**4.** The tax court was troubled by the commissioner's desire to have a "trial" on the issue of possession when he was unable, in the first instance, to rebut or contradict respondent's testimony in this regard:

Respondent argued that the commissioner had not presented any genuine issues of material fact requiring trial. For purposes of the hearing, respondent did not dispute what was found or where it was found at the time of her husband's arrest. According to respondent, the only issue is one of law, namely, whether respondent constructively possessed the cocaine for purposes of the controlled substance tax and penalty assessed.

The commissioner conceded that the following evidence in the record was the basis of the assessment against respondent: (1) she was married to Richard Fort, who was charged and convicted of possession of a controlled substance; (2) the drugs were found in the headboard of the bed in which she slept; (3) there was other drug paraphernalia in the apartment;[3] and (4) respondent knew that her husband was a drug addict and trading cocaine for heroin. The commissioner provided no evidence to rebut the statements of respondent and her husband that she had nothing to do with the drugs found.[4] It is at this point, the commissioner argues, that the privileged discovery responses furnish the additional basis for enforcing the assessment against respondent.

In deciding the cross motions, the tax court did not reach the issue of the self-incrimination objections because "there is nothing indicating that [respondent here] at any time exercised any dominion or control over the cocaine in question and therefore is not liable for the controlled substance tax that has been assessed against her." The commissioner appeals from this order, asserting that respondent's invocation of the privilege against self-incrimination in response to discovery requests raised genuine issues of material fact, which should have precluded summary judgment.

The Court: Well, to trial, what would the Commissioner—what, do you have a secret witness that can come in and say we know that this belonged to Mrs. Fort because she told us it belonged to her or we saw her dealing or why isn't that presented now? Because what could the Commissioner come up with that would contradict both the statements of both the parties that she had nothing to do with it?

In reviewing the tax court's entry of summary judgment, this court must accord the same finality and deference to the order as it does to a district court's order. *In re McCannel*, 301 N.W.2d 910, 919 (Minn. 1980). Thus, this court must determine whether there are any genuine issues of material fact and whether the tax court erred in its application of the law to the facts. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979). Finally, "[r]eview of Tax Court determinations is generally limited to determining whether there is sufficient evidence to support the Tax Court's decision. Although review of questions of fact is limited, this court has plenary power with respect to questions of law." *Nagaraja v. Commissioner of Revenue*, 352 N.W.2d 373, 376 (Minn.1984) (citations omitted).

The issues presented on this appeal are:

I. Did the tax court err in concluding that respondent did not constructively possess the cocaine?

II. Does respondent's invocation of her self-incrimination privilege create genuine issues of material fact or otherwise preclude summary judgment?

■■■ The tax court based its decision on the doctrine of constructive possession. This court has long recognized constructive possession of controlled substances as a basis for criminal liability. *See, e.g., State v. Cusick*, 387 N.W.2d 179 (Minn.1986); *State v. Wiley*, 366 N.W.2d 265 (Minn. 1985); *State v. Wiley*, 295 Minn. 411, 422, 205 N.W.2d 667, 675–76 (1973); *State v. LaBarre*, 292 Minn. 228, 237, 195 N.W.2d 435, 441 (1972). In order to show unlawful possession of a controlled substance, the state must prove an individual consciously possessed and had actual knowledge of the nature of the illegal substance. *State v. Florine*, 303 Minn. 103, 104, 226 N.W.2d 609, 610 (1975). In addition,

[t]he purpose of the constructive-possession doctrine is to include within the possession statute those cases where the state cannot prove actual or physical possession at the time of the arrest but where the inference is strong that the defendant at one time physically possessed the substance and did not abandon his possessory interest in the substance but rather continued to exercise dominion and control over it up to the time of the arrest.

*Id.* at 104–05, 226 N.W.2d at 610.

In *Florine*, this court adopted a two-pronged inquiry for determining criminal liability for constructive, unlawful possession. Under that test, the state must show either that the substance was found in a place under defendant's exclusive control to which other people did not normally have access or that, if found in a place to which others had access, "there is a strong probability (inferable from other evidence) that defendant was at the time consciously exercising dominion and control over it." *Id.* at 105, 226 N.W.2d at 611. In addition, this court has held that one may constructively possess controlled substances "singly or with others." *Wiley*, 295 Minn. at 422, 205 N.W.2d at 675–76; *LaBarre*, 292 Minn. at 237, 195 N.W.2d at 441.

Thus, the analysis under the constructive-possession doctrine is necessarily fact driven, and this court has required the state to show a "strong probability" that a defendant consciously exercised dominion and control over the substance to find criminal liability. *See, e.g., State v. Lorenz*, 368 N.W.2d 284 (Minn.1985) (defendant constructively possessed cocaine discovered in bedroom shared with another; defendant also constructively possessed marijuana discovered in common area of apartment, either as sole or joint possessor, in view of other evidence tying marijuana to defendant); *State v. Maldonado*, 322 N.W.2d 349, 353 (Minn.1982) (marijuana found in truck driven and owned by defendant, from which defendant fled upon approach by police); *State v. Carr*, 311 Minn. 161, 249 N.W.2d 443 (1976) (defendant constructively possessed controlled substance found in common area of apartment where defendant rushed toward area where drugs were found when police search began).

In contrast, in tax court cases, the state is not held to a standard as exacting as the "strong probability" standard. The taxes

and penalties assessed by the commissioner are presumed valid and correctly assessed until the taxpayer can show their incorrectness or invalidity. Minn.Stat. § 297D.12, subd. 3 (1990). In this case, respondent rebutted the commissioner's initial assessment by providing both her own and her husband's testimony that she did not possess the cocaine. We think it is incumbent upon the commissioner now to offer additional evidence that respondent possessed the cocaine in order to prevail on the assessment.

Thus, the use of the constructive-possession doctrine to show possession for tax liability purposes apparently lowers the threshold showing the state must make.[5] Application of the doctrine may be inequitable to a taxpayer attempting to show the incorrectness of an assessment because of the state's lower burden of proof.[6] Although in nature a civil proceeding, criminal sanctions are contemplated under Minn. Stat. § 297D.09, subd. 1a (1990).

In this case, the facts introduced to show respondent's joint constructive possession of the controlled substance are undisputed. Also uncontroverted are the police reports and testimony of respondent and her husband that she "had nothing to do with [the drugs]." Accordingly, the question remains whether these facts add up to the legal conclusion that respondent constructively possessed the drugs for purposes of assessing the controlled substances tax and penalty. The tax court, applying the standard set forth in *Florine*, held that the facts did not reveal any evidence that respondent exercised dominion and control over the cocaine. Of course, this court reviews questions of law *de novo* and may disregard the tax court's conclusion.

Nevertheless, we agree with the tax court's conclusion. The commissioner's initial assessment against respondent was apparently based on her marriage to Mr. Fort. At no time was respondent suspected of possessing or dealing drugs. The other facts do not show a "strong probability" that respondent consciously exercised dominion and control over the cocaine. However, the issue remains whether respondent's self-incrimination objections provide the added negative inference to prove her constructive possession of the cocaine.

■ In both the main and reply briefs, the commissioner argues that respondent's assertion of her self-incrimination privilege creates genuine issues of material fact which should preclude summary judgment in favor of respondent and entitle the commissioner to a trial. The commissioner apparently argues that respondent's self-incrimination assertions entitle the commissioner to judgment as a matter of law (*i.e.*, they lead to an adverse inference which leads to the *legal* conclusion that respondent possessed the cocaine in question). However, the commissioner also argues for reversal in order to try the issue of possession, not to enter judgment in his favor. It is not clear what additional evidence the commissioner intends to offer to show possession aside from the adverse inferences from respondent's self-incrimination objections.

The commissioner cites this court's analysis and treatment of a civil defendant's invocation of the right against self-incrimination in *Parker v. Hennepin County Dist. Court, Fourth Judicial Dist.*, 285 N.W.2d 81 (Minn.1979), as dispositive of the case at bar. There, defendants to a civil action sought a mandamus to

---

5. It is interesting to note that the commissioner frequently relies on the doctrine of constructive possession in making its assessments. *See, e.g., Schreiber v. Commissioner of Revenue,* File No. 5433, 1991 WL 148966 (Minn.Tax Ct. July 5, 1991) (doctrine applied in upholding assessment); *Lahr v. Commissioner of Revenue,* File No. 5194, 1991 WL 44880 (Minn.Tax Ct. Mar. 25, 1991) (doctrine applied in reversing assessment).

6. Even in the criminal context, constructive possession may be a tenuous doctrine. As one

commentator put it, courts have attempted "to rationalize the imposition of criminal liability in situations where there is no actual possession, [and] have constructed a terminology purportedly designed to focus factual inquiries on factors likely to reveal whether the defendant had the ability or capacity to possess the item." Whitebread & Stevens, *Constructive Possession in Narcotics Cases: To Have and Have Not,* 58 Va.L.Rev. 751, 751 (1972).

compel the district court to vacate an order in which it had deemed admitted requests for admissions which the defendants had refused to answer on fifth amendment grounds. *Id.* at 82. We affirmed the order of the district court and denied the mandamus petition. *Id.* at 84.

In upholding the district court's order, this court balanced the policies behind the fifth amendment and those supporting the discovery rules:

> [T]he right to plead the Fifth Amendment is not absolute. The availability of the right is delineated by the Fifth Amendment's prohibition against compulsed testimony in *criminal* cases. The Fifth Amendment, therefore, may only be invoked when testimony in a civil case would enhance the threat of criminal prosecution such that reasonable grounds exist to apprehend its danger.

*Id.* at 83 (emphasis in original) (citations omitted). Accordingly, because the requests for admissions had no life outside the pending litigation and could not be used in a subsequent criminal prosecution, deeming them admitted in a civil case did not "violate any of the policies underlying the Fifth Amendment." *Id.* at 83-84.

At the same time, however, we emphasized the delicacy with which a civil defendant who invokes the privilege must be treated "because of the involuntary nature of a defendant's participation * * * and the appearance of compulsion." *Id.* at 83. We were careful to point out that deeming the answers admitted did not "punish a defendant for his assertion of the privilege, but for his failure to answer as he typically would have under normal circumstances." *Id.* at 83.

We cited *Baxter v. Palmigiano*, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976), to support our conclusion in *Parker*. 285 N.W.2d at 83. In *Baxter*, the Supreme Court held that a prison disciplinary board properly could draw an adverse inference from a defendant's election to remain silent in the face of probative evidence offered against him. 425 U.S. at 320, 96 S.Ct. at 1559. However, the majority pointed out that

silence in and of itself is insufficient to support an adverse decision * * *. [T]his case is very different from the circumstances * * * where refusal to submit to interrogation and to waive the Fifth Amendment privilege, standing alone and without regard to the other evidence, resulted in loss of employment or opportunity to contract with the State. There, failure to respond to interrogation was treated as a final admission of guilt. *Id.* at 317-18, 96 S.Ct. at 1557-58.

Here, the commissioner appears to argue that respondent's silence is a final admission of guilt. Arguably, the commissioner cannot show respondent's possession without the adverse inference. The question at this point becomes whether respondent's silence (and adverse inference flowing from it) may be the deciding factor that tips the scale in favor of the commissioner. If it may be so used, then we must decide whether respondent's silence actually requires judgment for the commissioner in this case. In our view, such a use of respondent's assertion of ⸰ the privilege would penalize her for exercising her constitutional rights.

As the Court stated in *Baxter*, the use of the adverse inference in the prison disciplinary proceeding "does not smack of an invalid attempt by the State to compel testimony without granting immunity or to penalize the exercise of the privilege." 425 U.S. at 318, 96 S.Ct. at 1558. However, other Supreme Court cases based on facts more analogous to the instant case have found that individuals were improperly punished for exercising the privilege. For example, in *Spevack v. Klein*, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967), an attorney had been disbarred for refusing, under the fifth amendment, to produce financial records pursuant to a subpoena. *Id.* at 512-13, 87 S.Ct. at 626-27. The Court stated that the privilege protects individuals from any penalty for their silence and that its protection bars "the imposition of any sanction which makes the assertion of the privilege 'costly.'" *Id.* at 515, 87 S.Ct. at 628 (citation omitted). The Court held that the disbarment penalty violated the fifth amendment. *Id.* at 516, 87 S.Ct. at 628.

Similarly, in *Lefkowitz v. Turley*, 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973), the Court addressed the imposition of non-criminal penalties for exercising the privilege. There, two architects refused to testify, under the fifth amendment, before a grand jury investigating charges of corruption relating to state contracts. *Id.* at 75–76, 94 S.Ct. at 321. A state statute provided that this refusal would result in cancellation of existing state contracts and ineligibility for future contracts for 5 years. *Id.* at 71, 94 S.Ct. at 319. This "substantial economic sanction," imposed in a noncriminal context, was held to infringe the fifth amendment. *Id.* at 82–83, 94 S.Ct. at 324–25.

This court also addressed the adverse use of a party's fifth amendment assertion in *In re J.W. and A.W.*, 391 N.W.2d 791 (Minn.1986), *cert. denied*, 479 U.S. 1040, 107 S.Ct. 899, 93 L.Ed.2d 850 (1987). That case involved a petition of dependency and neglect concerning two children of a couple who were under investigation for the death of a third child, their nephew. Hennepin County obtained an order requiring the parents to submit to depositions in the neglect proceeding; however, both invoked their fifth amendment right against self-incrimination in response to all questions posed to them. 391 N.W.2d at 792. On the petition of the county, the district court issued an order deeming the matters for which the parents had invoked the privilege established for purposes of the petition and barred the parents from opposing those matters at the dependency and neglect trial.[7] *Id.*

The court of appeals held that the district court's bar of the parents offering evidence or cross-examining witnesses violated the parents' due process rights. According to

the appeals court, such a prohibition created too great an erroneous deprivation risk to the parents' parental rights and required them to sacrifice due process in order to invoke the fifth amendment. *Id.*, 391 N.W.2d at 793.

This court, discussing the relevancy of *Parker* on the sanctions imposed against the parents, stated as follows:

[In *Parker*], we held the privilege against self-incrimination must, in a civil suit, be balanced against the policy supporting discovery rules and the public interest in preventing an unfair advantage to one party. In cases involving children, the interests of those children in safety and protection must also be balanced. Family members are frequently the best, if not the only, source of information regarding the abuse of children when such abuse occurs within the family setting.

*Id.*, 391 N.W.2d at 795 (citation omitted). Thus, we upheld the discovery sanctions because the children's rights to safety and protection outweighed the parents' right to a hearing on the merits.

*In re J.W. and A.W.* does not change the analysis here. In this case, the interests the court must balance are those we discussed in *Parker*. The state's interest in enforcing chapter 297D does not warrant the balancing of additional considerations as did the state's interests in the safety and protection of children in *In re J.W. and A.W.* Nor is respondent the only source of information regarding her alleged possession of the cocaine. The commissioner may not rely solely on respondent's silence to prove the validity of the tax and assessment.

Finally, the fact that the state, through the commissioner, has initiated this action is another factor counseling against using

---

7. The order was based on Minn.R.P.Juv.Ct. 57.-10, subd. 4(a), (b) (1984), which read in pertinent part as follows:

If a participant fails to obey an order to provide or permit discovery, including an order under these rules, the court in which the action is pending may make such orders in regard to the failure as are just, including the following:
(a) an order that the matters regarding which the order was made, or any other designated

facts, shall be taken to be established for purposes of the proceeding, in accordance with the claim of the participant who obtained the order, or
(b) an order refusing to allow the disobedient participant to support or oppose designated claims, or prohibiting the disobedient participant from introducing designated matters into evidence * * *.

the adverse inference as the deciding factor in determining respondent's alleged possession of the cocaine. Justice Brennan, in his dissent in *Baxter*, acknowledged that the adverse inference would be permissible in civil suits between private parties. However,

> [i]n a civil suit involving only private parties, no party brings to the battle the awesome powers of the government, and therefore to permit an adverse inference to be drawn from exercise of the privilege does not implicate the policy considerations underlying the privilege. But where the government "deliberately seeks" the answers to incriminatory questions, allowing it to benefit from the exercise of the privilege aids, indeed encourages, governmental circumvention of our adversary system.

*Baxter*, 425 U.S. at 335, 96 S.Ct. at 1566 (Brennan, J., dissenting).

In summary, even though the respondent did not answer the original discovery requests for answers to interrogatories, she did answer the questions and disclosed the facts which the commissioner sought in subsequent statements and answers. For example, in the request for admissions, the respondent answered as follows:

> Appellant has no direct, personal knowledge regarding where any controlled substances might have been found. She never saw any of the substances in question, either before or at the time of the search and arrest of her husband. The bed in which she and her husband slept at the time of her husband's arrest did not have an open headboard. At the head of the bed were three shelves each running one-third of the width of the separate doors. The bottom of each of the three shelves could be removed to disclose a separate storage area underneath the shelf. Appellant used only one of the shelves (with its storage area underneath).

According to the police investigation report, respondent's husband stated that respondent knew nothing about his activities and did not know about the cocaine. At that point, the tax court was in a position to determine whether there were any facts in dispute. The question is whether the adverse inference may be used to deny the trial court its right to determine and grant the summary judgment. However, the commissioner has the responsibility to introduce some independent evidence that the information from respondent and her husband is inaccurate. We feel the commissioner has wholly failed in this regard. We deem it quite inappropriate to have a trial whose sole purpose is to allow the commissioner to engage in a fishing expedition in the remote hope that some additional information may surface in the cross-examination of respondent.

Accordingly, because the commissioner (1) is attempting to use respondent's assertion of the privilege against self-incrimination as the decisive factor in concluding that respondent possessed the cocaine and (2) has provided no additional facts to support the conclusion that respondent constructively possessed the substance, we hold that the adverse use of respondent's self-incrimination objection would penalize her for an exercise of her constitutional rights.

The tax court is accordingly affirmed.