THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. ANTONIO BARONE, PLAINTIFF IN ERROR.

Submitted July 7, 1921—Decided December 20, 1921.

1. The conditions existing at a place where a homicide was committed remain always the subject of proof; the probative value of such testimony will depend largely on the time when, after the homicide, the conditions first came under observation.

2. In a quarrel in a restaurant, two men were shot and killed by the defendant, and upon indictment he was tried and convicted of the murder of B. Defendant admitted firing two shots at the other victim, P., but claimed they were fired in self-defence while P., in a standing position, pointed a gun at him and pulled the trigger twice before defendant fired. *Held*, that evidence of the result of an autopsy by a physician of the body of P., of the place of the entrance of the bullet and the direction of it, was competent.

3. A witness may be asked upon cross-examination whether or not he had made statements contradictory of the testimony upon direct examination, for the purpose of discrediting his testimony.

4. A failure to charge a proposition, even though applicable to the facts of the case, cannot be made the basis of an assignment of error without a request to charge.

On writ of error to the Essex County Court of Oyer and Terminer.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER and KALISCH.

For the plaintiff in error, *J. Victor D'Aloia* and *Alexander Simpson*.

For the defendant in error, *J. Henry Harrison,* prosecutor of the pleas.

The opinion of the court was delivered by

KALISCH, J. The plaintiff in error was indicted for murder and a jury convicted him of murder in the first degree with a

recommendation of life imprisonment. The case is before us for review, by strict writ of error and under section 136 of the Criminal Procedure act.

The murder had its origin in a quarrel that took place in a restaurant on Washington street, in the city of Newark, between Patsey Benevento and Arturo Papalardo, both of whom were shot and killed by the plaintiff in error. The indictment on which the plaintiff in error was tried and convicted charged him with the murder of Benevento.

The plaintiff in error, according to the evidence in the case, admitted that he fired two shots at Papalardo from a thirty-two caliber revolver, but claimed that they were fired in self-defence, in that Papalardo in a standing position pointed a gun at the plaintiff in error and pulled the trigger twice, before he, the plaintiff in error, did any shooting at all.

On the part of the state there was evidence that Papalardo and Patsey Benevento were struggling on the floor, with Papalardo on top of him, when the shots were fired by the plaintiff in error, who was standing alongside the wall of the room to the left of the place where Benevento and Papalardo were. Benevento it appears was a friend of the plaintiff in error, and the killing of Benevento was evidently not intended but was the result of being hit by a bullet intended for Papalardo.

This brief statement of the case will tend to shed some light on the grounds urged by the plaintiff in error for a reversal of the judgment.

The first ground argued for reversal in the brief of counsel of the plaintiff in error is as follows: "The trial court erroneously admitted evidence of an autopsical examination made by the county physician on the body of a person other than the decedent mentioned in the indictment."

The contention is, that in admitting the testimony of the county physician as to what he found at the autopsy made on the body of Papalardo, it allowed proof of his death and the cause thereof—in fact, proof of a separate and distinct crime which judicial action was harmful and prejudicial to defendant.

We think the proof was clearly competent in the aspect in which it was introduced. There was proof that Papalardo and Benevento were on the floor, the latter on top of the former, engaged in a struggle when the defendant fired, in quick succession, two shots at Papalardo, one of which struck and killed Benevento and the other struck and killed Papalardo. The defendant admitted that he fired two shots at Papalardo, but claimed that he did it in self-defence and while Papalardo was on his feet aiming a gun at him. The bullet which killed Benevento was of thirty-two caliber and the bullet which killed Papalardo was of the same caliber. Further, the autopsy indicated from the wounds inflicted, and the course that the bullets took, that they were fired from the direction where the defendant was standing, according to the testimony of one of the state's witnesses when the shots were fired. Testimony as to the character and place of the entrance of the bullet into the body of Papalardo, and the direction the bullet took after such entrance, was competent, and had a material bearing on the issue whether or not at the time the shots were fired by the defendant at Papalardo the latter was standing on his feet or was lying on the floor, with Benevento on top of him. If the bullets fired at Papalardo entered the floor after striking his body, can there be any doubt as to the competency of testimony proving the condition of the floor in that respect and in order to establish in what position the revolver was held by the defendant when he fired the shots? We think not. The state was clearly entitled to resort to this circumstantial evidence for the purpose of establishing how and under what circumstances Benevento was killed.

The second ground urged for a reversal is that the court improperly permitted Edward McLaughlin, a witness for the state, to testify as to conditions he found on the premises two or three hours after the shooting, and improperly admitted in evidence four or five revolvers which were found in the drawer of a table in the kitchen.

The objection to McLaughlin's testimony as to the conditions he found on the premises two or three hours after the

shooting took place is not well founded, since the objection can only affect the probative value of the testimony and not its competency.

The conditions existing at a place where a homicide was committed remain always the subject of proof; the probative value of such testimony will depend largely on the time when after the homicide the conditions first came under observation.

Now, as to the admission in evidence of the revolvers found in the kitchen table drawer, it is difficult to see what particular bearing their introduction in evidence had on the case either one way or another. For McLaughlin testified that the weapons he found were fully loaded and bore no evidence of having been recently discharged.

In view of the fact that the defendant confessed that he fired two shots at Papalardo with a thirty-two caliber revolver, the introduction of the revolvers in evidence could not possibly have harmed the defendant in maintaining his defence.

Next, it is insisted that the court below erred in permitting a revolver belonging to a detective to be offered in evidence against the defendant. But, it appeared that the revolver had been shown to the defendant by the witness; that it was a thirty-two caliber, and that the defendant had stated that the revolver with which he shot at Papalardo, in which shooting state claimed Benevento was killed, was "the same as shown me" by the detective. The revolver was therefore properly received in evidence as establishing the character of the revolver used by the defendant at the time of the shooting.

It is further contended that the court below erroneously admitted a statement in evidence made by Michael J. Cupola out of the presence of the defendant, and, further, improperly allowed such statement to be contradicted by rebuttal testimony.

This is not a strictly accurate statement of the situation. Cupola was a witness called by the defence. Upon his direct examination he testified not only as to his own acts immediately prior to the shooting, but also as to the acts of others and what he saw immediately before and at the time of the

shooting. Upon cross-examination it was elicited that he had made a statement, in writing, in the presence of several police officers, which counsel of the state claimed was contradictory of the testimony given by the witness, as to what he saw at the time when Benevento was shot. The witness was asked whether the statement then made was correct as to what took place on the early morning in the Florence Garden restaurant, to which he replied in the affirmative. This was followed by the question: "Did you not say in that statement, among other things, that about 12:30 A. M. on the morning of March 21st, 1920, 'I entered the Florence Garden, on Washington street, and upon entering the place I saw a crowd of men arguing; I went directly to the rear door and left the place;' did you say that?" The answer was "Yes, sir." The witness further stated that while leaving the place he heard several shots fired. Upon his direct examination the witness had testified that he saw Papalardo and the defendant outside of the restaurant talking together on the sidewalk, and when they entered the restaurant he followed them in and that he saw Papalardo pull a gun, and at this demonstration he, the witness, went out. The witness also admitted that he did not say anything to the police officers when they questioned him as to having seen Papalardo and the defendant together outside of the restaurant, or that he saw Papalardo pull a gun.

The witness having been called by the defence to testify as to his own acts and as to what he saw others do at the time of the shooting, it, therefore, becomes incomprehensible what legal rule of evidence was violated in permitting the cross-examiner to elicit from the witness whether or not he had made statements contradictory of the testimony given by him. It is an elementary and familiar rule of evidence that this may be done. Of course, such statements do not become substantive evidence for or against the defendant and are only to be considered by the jury as to the amount of credence to be given to the testimony of the witness. It was evidently in this aspect that the testimony was received. For the trial judge, in the course of his instructions to the jury, not having

been requested by counsel of defendant to charge the jury that the statement made by Cupola to the police officers could not be used as evidence against the defendant, and could only be considered by the jury, if such statements were contradictory of the testimony given by the witness, as affecting his credibility, made no reference to the statements made by Cupola to the police officers, and in dealing with the defendant's defence that Papalardo aimed a pistol at the former who in the belief that Papalardo intended to kill him fired the shot that killed Papalardo, said to the jury: "A part of that story [referring to defendant's story], which is corroborated by Cupola, as I remember it, is that Cupola saw Papalardo draw out a revolver and heard him use some vile language, but did not see any of the rest because he was intent upon getting out."

It is further contended that it was harmful error to allow Officer McRell to be called by the state to rebut the testimony of Cupola. An examination of McRell's testimony discloses that it was rather corroborative of Cupola's testimony as to what occurred at the time he made the statement, and, therefore, could not possibly have harmed the defendant.

Lastly, it is urged that the court committed harmful error in not limiting the force and effect of a written statement made by Ross, a witness for the state, which was contradictory of his sworn testimony. It is argued that the court, under the case of *State* v. *D'Adame*, 84 *N. J. L.* 386, was under a duty to charge the jury that such statement was not substantive evidence, and that the contradictory statement could only be used to affect the credibility of the witness.

A careful reading of the testimony of Ross, and of the statement previously made by him to McRell, will disclose that the only material contradiction between the statement and the testimony was, that in the former he described the defendant as the person standing on his left who fired at the two men on the floor, whereas in his testimony he said that the defendant was standing on his left but he did not see him fire at the men. In view of the fact that the defendant admitted that he fired the shots at Papalardo, it is apparent that no harm was done

to the defendant even if we assume that the case of *State* v. *D'Adame, supra,* made it obligatory upon the trial judge to instruct the jury that this testimony was only admissible for the purpose of qualifying the testimony given by Ross.

We do not think that it was the design of the Court of Errors and Appeals in the case cited to promulgate any new rule of evidence and procedure thereon different from that which obtains in any other case where testimony offered is oftentimes competent for a certain purpose only. Undoubtedly, in such a case where the court comments upon such testimony, it is its duty to explain to the jury the limitation and effect of such proof, but where, as in the present case, the trial judge did not refer to the contradictory testimony of either Cupola or Ross, there was no good reason why there should have been a departure from a long line of cases, decided by our Court of Errors and Appeals, uniformly holding that a failure to charge a proposition, even though applicable to the facts of the case, cannot be made a basis for an assignment of error or a specification for a cause for reversal without a request to charge.

The last objection to the validity of the verdict argued, perfunctorily, in the brief of counsel of defendant, is based upon the following excerpt from the court's charge:

"The court understands that the contention of the prosecution is that the state has presented evidence to show that Papalardo drew the revolver and pointed it at Benevento; that Patsey Benevento struck at Papalardo, knocked him to the ground, and while there this defendant shot him—shot Patsey Benevento and killed him, and also shot and killed Papalardo."

It is apparent that what the court said was not error in law. He was stating what his understanding of the evidence was and what the state contended for. The jurors had been previously admonished to rely upon their own recollection of the evidence. If he was mistaken in his understanding of what the testimony was, or what the state contended for, defendant's counsel made no attempt to have the mistake called to

the attention of the court and ask to have the alleged mistake corrected.

This concludes our examination and consideration of all the alleged errors argued in the brief of counsel of plaintiff in error, and finding no reversible error in any of them, the judgment of the court below must be affirmed.