165 N.J. Super. 249 (1978)
398 A.2d 101
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
LEVI FORD, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted March 6, 1978.
Decided May 9, 1978.
*251 Before Judges MICHELS, PRESSLER and BILDER.
Mr. Stanley C. Van Ness, Public Defender, attorney for appellant (Mr. Michael I. Lubin, Designated Counsel, of counsel and on the brief).
Mr. John J. Degnan, Attorney General of New Jersey, attorney for respondent (Mr. William F. Hyland, former Attorney General of New Jersey, and Mr. Frederick S. Cohen, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by BILDER, J.S.C. (temporarily assigned).
This is an appeal from a conviction of armed robbery (N.J.S.A. 2A:141-1 and N.J.S.A. 2A:151-5) in which defendant contends as error: (1) the admission of tainted identification evidence; (2) the admission of a .45-caliber automatic, admittedly unrelated to the crime, as an example of the weapon described by witnesses, and (3) the denial of a continuance to produce an additional witness.
At about 8:45 on the morning of July 21, 1975 a McDonald's restaurant in Elizabeth was held up by two black males armed with revolvers. One man wore a ski mask and the other (allegedly Ford) had a woman's stocking covering his face as far down as his chin.
Three employees who were present at the time witnessed the events and later identified defendant as one of the participants. All three had unobstructed views of defendant in a well-lit environment from distances of a few feet for periods of less than a minute to three to four minutes.
Within minutes after the commission of the robbery police arrived at the scene. Before receiving any descriptions from the victims, the investigating officers displayed a flier containing *252 mug shots of defendant and asked, "Is this him?" Defendant contends this identification procedure was impermissibly suggestive; that the ensuing identifications were tainted. We agree.
Due process requires that the identification procedure be fair and reasonable. Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). If the identification results from a procedure which is so unnecessarily suggestive as to give rise to a substantial likelihood of mistake, it must be excluded. See Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed. 2d 1199 (1967).
In the instant case the procedure was highly suggestive, and gratuitously so. The police who arrived within five minutes of the robbery report immediately showed mug shots of two men to the witnesses. The very circumstance of being shown mug shots of two men by police responding to a robbery by two men suggests official suspicion of guilt. Implicit in the immediate flier viewing is the notion that this guilt is evidenced by other facts known to the police. Here are witnesses, still fresh in the ambiance of an armed robbery  from whom descriptions of masked men will be sought  confronted with photographs of men obviously suspected by the police without even a question as to descriptions. The notions thus planted in the witnesses' minds make their subsequent identifications unreliable  and unfairly so. Had the witnesses been first asked for descriptions, they would have had the opportunity to review their recollection free of outside suggestion and a benchmark would have been established for testing the reliability of any subsequent identification. Certainly we cannot say there was not a substantial likelihood of misidentification in this case.
Nor can we say that the subsequent out-of-court and in-court identifications were not resultantly tainted. U.S. v. Wade, 388 U.S. 218, 240, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). Here the precipitous conduct at the crime scene was compounded by a photo showup at the police station where the same two sets of mug shots displayed on the *253 flier were shown as part of the array. If there was a danger of later identification based on the flier photographs rather than the robbery, that possibility was reinforced by repetition.
The conclusion we reach is not only compelled by the logic of the situation and a recognition of the human fallibilities of identifications, but also by collateral facts suggesting unreliability. Thus we note for example, as did the trial judge, that there were numerous discrepancies in the descriptions given by the witnesses, among themselves, and when compared with defendant.
We do not intend by our action here to suggest that the showing of a single photograph at the crime scene is bad. See State v. Wilkerson, 60 N.J. 452, 461 (1972). We limit this strictly to a situation like the instant case where the perpetrators are disguised and the police show photographs before making attempts to obtain information and descriptions unaffected by official suspicion and incapable of resulting from official suggestion.
We note also the applicability of Evid. R. 4 to the offer of a sample .45-caliber pistol. While the exhibit may have had materiality, whatever probative value it had was clearly outweighed by its inflammatory nature. This error, while probably not reversible, should be avoided on retrial.
We find no merit to defendant's final point.
Reversed and remanded.
MICHELS, J.A.D. (dissenting).
I am constrained to disagree with the result reached by my colleagues. In my view the judgment of conviction should be affirmed.

I
I am convinced that the trial judge did not commit reversible error by admitting testimony regarding the out-of-court identifications of defendant.
*254 The standard for the admissibility of testimony concerning an out-of-court identification is whether there is "a very substantial likelihood of misidentification," even where the confrontation procedure was suggestive. The factors to be considered in such an evaluation include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Neil v. Biggers, 409 U.S. 188, 198-199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972). See also, State v. Farrow, 61 N.J. 434, 451 (1972), cert. den. 410 U.S. 937, 93 S.Ct. 1396, 35 L.Ed.2d 602 (1973).
The determination of whether the identification deprived the defendant of due process of law depends on the totality of the circumstances surrounding it. Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). Each case must be considered on its own facts. Simmons v. United States, 390 U.S. 377, 383-384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).
Our function as a reviewing court is to decide whether, considering the evidence as a whole, the trial judge could reasonably conclude that the identification procedure was not so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. State v. Bono, 128 N.J. Super. 254, 262 (App. Div.), certif. den. 65 N.J. 572 (1974); State v. Mars, 107 N.J. Super. 36, 39 (App. Div. 1969), certif. den. 55 N.J. 319 (1970). In this inquiry, the trial court's conclusions are "entitled to very considerable weight." State v. Farrow, supra 61 N.J. at 451.
Sufficient facts were presented at the Wade hearing for the trial court to reasonably conclude that the identification procedure used did not create a very substantial likelihood of irreparable misidentification at the out-of-court or *255 in-court identifications. The armed robbery of McDonald's restaurant in Elizabeth occurred at approximately 8:45 A.M. John Slanovec, the assistant manager, was working with Yvonne Shelton, another employee when two armed males entered the restaurant and ordered all the employees into the stockroom. Slanovec, who was about four feet away from the armed gunmen, turned around and watched everything for nearly four minutes under well lighted, visually unobstructed conditions. Both Mary Gaidis, another employee, and Shelton also had clear, unobstructed views of the gunmen, especially the one who was later identified as defendant. Gaidis testified that she stood behind defendant for about 30 seconds before he turned around, revealing his facial features despite the woman's stocking mask he wore. Defendant then herded her into the stockroom. After Slanovec opened the safe, defendant ordered him into the stockroom with the other employees. He was warned not to emerge for a couple of minutes. Defendant and his confederate left the restaurant through a rear exit, triggering a fire alarm. Immediately, the employees emerged from the stockroom and one of them summoned the police.
The police arrived within five minutes of the call. Slanovec, who was standing outside the building, was handed a flier containing two photographs of defendant and his confederate Asher Conn.[1] Slanovec was asked, "Were these the fellows?" He immediately recognized the men depicted in the photographs as his assailants. He told the police that he was positive about defendant's photograph and less sure of the other photograph. Gaidis, who was inside the restaurant, was also shown the flier. She, too, made a positive identification of defendant. After the identifications, the police told the witnesses that they carried the flier because the men had a few other robberies in the area to their *256 credit. A number of the other employees could not identify either photograph.
Shortly thereafter Slanovec, Shelton and Gaidis were taken to police headquarters where one by one each gave a description, a statement, and identified police photographs of defendant. Separately each was shown a group of ten photographs which included the flier photographs. Each positively identified defendant as one of the participants in the robbery. The photographs were shuffled and the identification procedure repeated twice. Each time defendant was positively identified by all three witnesses. While each identified defendant, only Slanovec was able to identify Conn as the other participant in the robbery. There was no discussion among the three about the identifications. Furthermore, all three witnesses made an unequivocal identification of defendant during the course of the trial.
The initial identifications of defendant by Slanovec and Gaidis were made at the scene moments after the crime before memories would reasonably be expected to fade. The witnesses' unequivocal recognition of defendant from the flier photographs did not result from any suggestive words or conduct by the police. I do not believe that the mere showing of the photographs to eyewitnesses under such circumstances would sway them sufficiently to misidentify an innocent person. Certainly, all three could not be that suggestible. Moreover, there is nothing in the Wade doctrine, as I understand it, which requires police under circumstances such as those present here to obtain from the eyewitness or victim a description of the assailants before a photographic identification may be undertaken. To require such a procedure would result in relinquishing any possible quick apprehension. Cf. State v. Wilkerson, 60 N.J. 452, 462 (1972).
Finally, I am of the view that the prior out-of-court identifications were not rendered unfair or unreliable and did not improperly influence the in-court identifications because the same two photographs shown to the eyewitnesses at the *257 scene were included in the subsequent array of photographs at police headquarters. As our Supreme Court so aptly observed in State v. Matlack, 49 N.J. 491, cert. denied 389 U.S. 1009, 88 S.Ct. 572, 19 L.Ed.2d 606 (1967):
While the use of photographs of several persons or a line-up of men is a helpful and desirable police technique, the absence of such a procedure does not in itself make a prior identification unfair or unreliable: the totality of the circumstances must be considered. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); State v. Fournier, 91 N.J. Super. 477, 479 (App. Div. 1966); see United States v. Chibbaro, 361 F.2d 365, 376-377 (3d. Cir. 1966). The absence of comparison ordinarily goes only to the weight of the testimony and not to its admissibility. See State v. Villegas, 101 Ariz. 465, 420 P.2d 940, 941 (Sup. Ct. Ariz. 1966); People v. Knowles, 35 Cal.2d 175, 217 P.2d 1, 3 (Sup. Ct. Cal. 1950); People v. Brinkley, 33 Ill.2d 403, 211 N.E.2d 730, 732 (Sup. Ct. Ill. 1965); cf. Palmer v. Peyton, 359 F.2d 199, 202 (4 Cir. 1966). Prior identifications are admissible because, being made when the events and sensory impressions are fresh in the mind of a witness, they are likely to be correct. See State v. Williams, supra, 39 N.J., at pp. 488-489 and 4 Wigmore, Evidence § 1130 (3d ed. 1940). [at 498]
Since I hold to the view that the out-of-court photographic identifications were not so impermissibly suggestive as to give rise to misidentification, I find no merit whatsoever in the claim that the in-court identifications of defendant by Slanovec, Shelton and Gaidis were tainted by them. Notwithstanding, the record clearly and convincingly establishes that the in-court identifications of defendant by each of these eyewitnesses was based on his or her own observation at the time the armed robbery took place. Each witness's identification had a separate and independent origin not influenced by any prior out-of-court identification. See United States v. Wade, 388 U.S. 218, 240-242, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); State v. Thompson, 59 N.J. 396, 414-419 (1971). Each identifying witness was present during the armed robbery and had ample opportunity to observe and mentally record defendant's image. See State v. Woodard, 102 N.J. Super. 419, 425-426 (App. Div.), certif. den. 53 *258 N.J. 64 (1968), cert. den. 395 U.S. 938, 89 S.Ct. 2004, 23 L.Ed.2d 453 (1969). Accordingly, I am satisfied that there was sufficient credible evidence in the record to sustain the admissibility of the in-court identifications of defendant by each of these eyewitnesses.

II
I am also satisfied that the trial judge did not mistakenly exercise his discretion by permitting a .45-caliber automatic, similar to the one used in the armed robbery, to be offered in evidence. There was testimony by Slanovec that the weapon marked in evidence was similar to the weapon used by defendant during the armed robbery. See State v. Mayberry, 52 N.J. 413, 435-436 (1968), cert. den. 393 U.S. 1043, 89 S.Ct. 673, 21 L.Ed.2d 593 (1969). The trial judge made it abundantly clear that the gun was being offered to enable the jury to more clearly visualize the type of weapon the witnesses said was used in the robbery. State v. Mayberry, supra at 435-436. See State v. Barone, 96 N.J.L. 417, 420 (Sup. Ct. 1921), aff'd 98 N.J.L. 292 (E. & A. 1922); State v. Fletcher, 90 N.J.L. 722, 723 (E. & A. 1917).
For the foregoing reasons, I would affirm the judgment of conviction.
NOTES
[1] Conn pleaded guilty to the armed robbery following plea negotiations, and his State Prison sentence was affirmed by this court in an unreported opinion filed on March 29, 1977 (Docket No. A-662-76).