269 N.J. Super. 116 (1993)
634 A.2d 1039
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
MICHAEL ORLANDO, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 26, 1993.
Decided December 13, 1993.
*121 Before Judges MICHELS, SKILLMAN and WEFING.
Joseph H. Orlando, Designated Counsel, argued the cause for appellant (Zulima V. Farber, Public Defender, attorney; Mr. Orlando, of counsel and on the brief).
Thomas Cannavo, Assistant Ocean County Prosecutor, argued the cause for respondent (Dan Carluccio, Ocean County Prosecutor, attorney; Mr. Cannavo, of counsel and on the brief).
*122 The opinion of the court was delivered by MICHELS, P.J.A.D.
Tried to a jury, defendant Michael Orlando was found guilty of (1) unlawful possession of a shotgun without first having obtained a firearms purchaser identification card, a crime of the third degree, in violation of N.J.S.A. 2C:39-5c(1) (Count One); (2) possession of a shotgun with a purpose to use it unlawfully against the person of another, a crime of the second degree, in violation of N.J.S.A. 2C:39-4a (Count Two); (3) terroristic threats, a crime of the third degree, in violation of N.J.S.A. 2C:12-3b (Count Three); (4) armed robbery, a crime of the first degree, in violation of N.J.S.A. 2C:15-1 (Count Four); (5) aggravated assault, a crime of the fourth degree, in violation of N.J.S.A. 2C:12-1b(4) (Count Five); and (6) kidnapping, a crime of the first degree, in violation of N.J.S.A. 2C:13-1b(1) (Count Six).
The trial court committed defendant to the custody of the Commissioner of the Department of Corrections (Commissioner) for (1) five years for unlawful possession of a shotgun without first having obtained a firearms purchaser identification card under Count One; (2) ten years for unlawful possession of a shotgun with a purpose to use it unlawfully against the person of another under Count Two; (3) five years for terroristic threats under Count Three; and (4) eighteen months for aggravated assault under Count Five. These sentences were to be served concurrently with one another. The trial court also committed defendant to the custody of the Commissioner for (5) twenty years for armed robbery under Count Four; and (6) ten years for kidnapping under Count Six which were to be served consecutively to one another for an aggregate term of thirty years. The trial court then imposed a fifteen year period of parole ineligibility without assigning the parole ineligibility term to any specific sentences or specific counts of the indictment. Additionally, the trial court ordered defendant to make restitution of one-third of $6,433 or $2,144.33 and assessed Violent Crimes Compensation Board penalties of $30 for each conviction for a total of $180. Finally, the trial court committed defendant to the custody of the Commissioner for *123 five years for a parole violation, which was to be served consecutively to the above sentences. Thus, the aggregate of the custodial sentences imposed upon defendant was thirty five years with a fifteen year period of parole ineligibility. Defendant appeals.
Defendant seeks a reversal of his convictions or, alternatively, a modification of his sentences on the following grounds set forth in his brief:
I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY ALLOWING INTO EVIDENCE THE IDENTIFICATIONS OF MICHAEL ORLANDO BY THE WITNESS BECAUSE OUT OF COURT THE PHOTOGRAPHIC IDENTIFICATION PROCEDURE WAS SO IMPERMISSIBLY SUGGESTIVE AS TO GIVE RISE TO A SUBSTANTIAL LIKELIHOOD OF IRREPARABLE MISIDENTIFICATION AND BECAUSE THE PROSECUTOR IDENTIFIED MICHAEL ORLANDO WHEN THE WITNESS COULD NOT IN VIOLATION OF DUE PROCESS PROTECTED BY BOTH THE UNITED STATES AND NEW JERSEY CONSTITUTIONS.
II. THE STATE'S FAILURE TO PRESERVE THE PHOTOGRAPHS SHOWN TO THE WITNESS AND TO PRODUCE THESE PHOTOGRAPHS VIOLATED MICHAEL'S DUE PROCESS RIGHTS GUARANTEED BY THE NEW JERSEY AND UNITED STATES CONSTITUTIONS AND, THEREFORE, REQUIRES ACQUITTAL, OR ALTERNATIVELY, SUPPRESSION OF THE IDENTIFICATION AT RETRIAL.
III. THERE WAS INSUFFICIENT EVIDENCE TO CONCLUDE THAT A "FIREARM" WAS USED, BUT RATHER BASED ON THE SWORN TESTIMONY OF THE OWNER OF THE GUN, IT WAS MERELY A REPLICA SINCE ITS BARREL WAS STUFFED WITH A WOODEN DOWEL, THE CASING WAS ROTTED AND HAD NO FIRING PIN OR STOCK. THEREFORE, THE "GUN" ALLEGEDLY USED WAS NEITHER A "FIREARM" OR A "WEAPON" WITHIN THE MEANING OF N.J.S.A. 2C:39-1.
IV. MICHAEL'S RIGHT TO DUE PROCESS AND A FAIR TRIAL WAS VIOLATED DUE TO PROSECUTORIAL MISCONDUCT IN THAT THE PROSECUTOR POINTED OUT THE DEFENDANT AS "MIKE" AT THE WADE HEARING AND FAILED TO DISCLOSE EXCULPATORY EVIDENCE RELATING TO BOTH GUILT AND SENTENCING (NOT RAISED BELOW).
V. DEFENDANT WAS DEPRIVED OF EFFECTIVE ASSISTANCE OF COUNSEL CONTRARY TO THE RIGHTS GUARANTEED BY THE NEW JERSEY AND UNITED STATES CONSTITUTIONS.
VI. THERE WAS NO BASIS IN THE RECORD TO JUSTIFY THE IMPOSITION OF THE LONGEST SENTENCE LEGALLY POSSIBLE BY DEVIATING FROM THE PRESUMPTIVE SENTENCES, MAKING *124 THOSE MAXIMUM SENTENCES CONSECUTIVE AND IMPOSING THE MAXIMUM PERIOD OF PAROLE INELIGIBILITY TO ARRIVE AT A 35 YEAR SENTENCE WITH A 15 YEAR PAROLE DISQUALIFIER. THE COURT ABUSED ITS DISCRETION BY IMPOSING A PATENTLY EXCESSIVE, DISPROPORTIONATE AND DISPARATE SENTENCE (PARTIALLY RAISED BELOW).
We have carefully considered these contentions and all the supporting arguments advanced by defendant and find that, with the sole exception of the failure of the trial court to assign the parole ineligibility term to any specific sentences or specific counts of the indictment, they are clearly without merit. R. 2:11-3(e)(2). Before turning to the issue of the legality of the parole ineligibility term, further comment is appropriate with respect to some of defendant's contentions.

I.
We are satisfied from our study of the record and the arguments presented that the trial court reasonably could have found that the pretrial photographic identification procedure was not so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. Neil v. Biggers, 409 U.S. 188, 199-201, 93 S.Ct. 375, 382-83, 34 L.Ed.2d 401, 411 (1972); Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247, 1253 (1968); State v. Madison, 109 N.J. 223, 232, 536 A.2d 254 (1988); State v. Ford, 79 N.J. 136, 398 A.2d 95 (1979), rev'g on dissent 165 N.J. Super. 249, 254, 398 A.2d 101 (App.Div. 1978); State v. Bono, 128 N.J. Super. 254, 262, 319 A.2d 762 (App.Div.), certif. denied, 65 N.J. 572, 325 A.2d 705 (1974). Impermissible suggestibility is to be determined by the totality of the circumstances attendant to the pretrial identification. The strength and credibility of the identification go to the weight that should be accorded the identification but is not the issue being tested in the admissibility proceeding. State v. Farrow, 61 N.J. 434, 451, 294 A.2d 873 (1972), cert. denied, 410 U.S. 937, 93 S.Ct. 1396, 35 L.Ed.2d 602 (1973). As our Supreme Court observed in State v. Carter, 91 N.J. 86, 129, 449 A.2d 1280 (1982), "`[R]eliability is the linchpin in determining the admissibility of identification *125 testimony....'" (quoting Manson v. Brathwaite, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140, 154 (1977)).
Application of these fundamentally sound principles compels the conclusion that the trial court did not err in finding that the victim's out-of-court photographic identification of defendant was admissible. Sufficient evidence was presented at the Wade hearing for the trial court to conclude that the identification procedure used did not create a very substantial likelihood of irreparable misidentification at the out-of-court or in-court identifications.
We are also satisfied, contrary to defendant's argument, that the record clearly and convincingly established that the victim's in-court identification of defendant was based on the victim's own observations at the time of the criminal assaults. The in-court identification certainly "had a separate and independent origin not influenced by any prior out-of-court identification." State v. Ford, supra, 165 N.J. Super. at 257, 398 A.2d 101. See also United States v. Wade, 388 U.S. 218, 240-42, 87 S.Ct. 1926, 1939-40, 18 L.Ed.2d 1149, 1164-65 (1967); State v. Thompson, 59 N.J. 396, 419, 283 A.2d 513 (1971).
First, the victim had ample opportunity to observe and mentally record defendant's image during the six-hour abduction. The victim was able to view defendant at a close range throughout the evening, particularly when defendant moved the victim into and out of the trunk. Defendant was not wearing a mask, and, although it was dark outside, the inside car light sufficiently illuminated defendant's face when the car door was open so that the victim easily could see defendant. Second, although the victim testified that he was frightened, there is no reason to conclude that he was scared to such a degree that he was unable to focus his attention on his assailants, including defendant. Evidently, the victim's thoughts were collected enough for him to drive and obey road signals. Third, the victim's prior description of defendant was consistent with the photographs used in the array, and he made the photographic identification only three days after the crimes occurred, when the events were still very fresh in his mind. *126 Finally, the victim exhibited a high degree of certainty about the identification at the Wade hearing. The victim stated that he was able to identify defendant immediately after viewing his photograph. The victim observed that defendant appeared different in court than he did the night of the crimes, particularly noting that he had shorter hair and was perhaps a little thinner. Nevertheless, the victim was adamant that defendant was the same man.
Accordingly, we affirm the admission of the victim's out-of-court photographic identification of defendant substantially for the reasons expressed by Judge Campbell in his oral opinion of June 20, 1990.

II.
Defendant also contends that his convictions should be reversed to the extent that they required a finding of possession of a firearm because the shotgun involved in the criminal offenses was an antique and incapable of being fired, and, therefore, not a "firearm" as defined by N.J.S.A. 2C:39-1f. Alternatively, defendant contends that he should be resentenced as a non-Graves Act offender because the shotgun involved did not qualify as a firearm for Graves Act purposes. We disagree with both contentions.
Defendant was charged with the following offenses that required a finding that a gun was used: (1) unlawful possession of a shotgun without first having obtained a firearms purchaser identification card in violation of N.J.S.A. 2C:39-5c and N.J.S.A. 2C:58-3 (Count One); (2) possession of a shotgun for an unlawful purpose in violation of N.J.S.A. 2C:39-4a (Count Two); (3) armed robbery in violation of N.J.S.A. 2C:15-1 (Count Four); and (4) aggravated assault with a shotgun in violation of N.J.S.A. 2C:12-1b(4) (Count Five).
It is unquestionable that sufficient credible evidence exists in this record to find defendant guilty beyond a reasonable doubt of armed robbery. Contrary to defendant's claim, N.J.S.A. 2C:15-1 *127 does not require a finding that the gun was a "firearm" within the definition of N.J.S.A. 2C:39-1f. N.J.S.A. 2C:15-1 provides:
a. Robbery defined. A person is guilty of robbery if, in the course of committing a theft, he:
(1) Inflicts bodily injury or uses force upon another; or
(2) Threatens another with or purposely puts him in fear of immediate bodily injury; or
(3) Commits or threatens immediately to commit any crime of the first or second degree.
An act shall be deemed to be included in the phrase "in the course of committing a theft" if it occurs in an attempt to commit theft or in immediate flight after the attempt or commission.
b. Grading. Robbery is a crime of the second degree, except that it is a crime of the first degree if in the course of committing the theft the actor attempts to kill anyone, or purposely inflicts or attempts to inflict serious bodily injury, or is armed with, or uses or threatens the immediate use of a deadly weapon. [Emphasis added].
"Deadly weapon" is defined in the New Jersey Code of Criminal Justice (Code) as follows:
"Deadly weapon" means any firearm or other weapon, device, instrument, material or substance, whether animate or inanimate, which in the manner it is used or is intended to be used, is known to be capable of producing death or serious bodily injury or which in the manner it is fashioned would lead the victim reasonably to believe it to be capable of producing death or serious bodily injury. [N.J.S.A. 2C:11-1c (emphasis added)].
Here, the victim was led to believe that the weapon held to the back of his head by defendant was a real gun. The victim testified that "[h]e [defendant] unzippered the bag, and he pulled out a rifle or a shotgun, and he stuck it in my neck here," and that defendant told him, "Just don't get any funny ideas or I am going to use that on you." The victim further testified that he was "very nervous" and feared for his life. This testimony was sufficient for the jury to conclude that the victim believed that the weapon was a real gun and therefore to find beyond a reasonable doubt that defendant committed armed robbery in violation of N.J.S.A. 2C:15-1.
The more difficult question is whether there was sufficient evidence that the gun was a "shotgun" or "firearm" within the meaning of N.J.S.A. 2C:39-1f to support defendant's weapons *128 convictions under Counts One, Two and Five. Defendant's convictions for (1) unlawful possession of a shotgun without first obtaining a firearms purchaser identification card, (2) possession of a shotgun with a purpose to use it unlawfully against a person of another, and (3) aggravated assault with a shotgun, all required a finding that the shotgun involved was a "firearm" within the meaning of N.J.S.A. 2C:39-1f. We are aware that N.J.S.A. 2C:39-5c, under which defendant was convicted in Count One, requires a finding that the gun was a "shotgun" or "rifle", and we note that both of these types of weapons fall within the definition of "firearm" under N.J.S.A. 2C:39-1f. Thus, to sustain a conviction under Count One, as well as Counts Two and Five, we also must find that the weapon was a "firearm" under the statute.
"Firearm" is defined in N.J.S.A. 2C:39-1f as follows:
"Firearm" means any hand gun, rifle, shotgun, machine gun, automatic or semiautomatic rifle, or any gun, device or instrument in the nature of a weapon from which may be fired or ejected any solid projectable ball, slug, pellet, missile or bullet, or any gas, vapor or other noxious thing, by means of a cartridge or shell or by the action of an explosive or the igniting of flammable or explosive substances. It shall also include, without limitation, any firearm which is in the nature of an air gun, spring gun or pistol or other weapon of a similar nature in which the propelling force is a spring, elastic band, carbon dioxide, compressed or other gas or vapor, air or compressed air, or is ignited by compressed air, and ejecting a bullet or missile smaller than three-eighths of an inch in diameter, with sufficient force to injure a person.
Defendant argues that the shotgun was not a firearm because it was inoperable, as the barrel was stuffed with a wooden dowel and the instrument did not contain a firing pin. To support this argument, defendant relies in part on the plea hearing testimony of co-defendant Selig. Selig testified that he found the shotgun that he, co-defendant Everett, and defendant possessed in an old pit where he collected bottles and junk. He described the shotgun as inoperable, having a barrel stuffed with a wooden dowel and no stock. He explained that they took the shotgun to New York to sell it but were unsuccessful. Selig admitted, however, that the gun was probably operable at one time.
The Supreme Court held in State v. Gantt, 101 N.J. 573, 582-84, 503 A.2d 849 (1986), that in determining whether a weapon is a *129 "firearm" within the meaning of N.J.S.A. 2C:39-1f, there is no requirement that the weapon be operable. The Court explained that the weapon need only be proven to be a "firearm" in terms of its original design. Id. at 584-85, 503 A.2d 849. Thus, the Court affirmed the principal holding of State v. Ortiz, 187 N.J. Super. 44, 49-50, 453 A.2d 567 (App.Div. 1982), that "a fake or toy gun is not a firearm within the meaning of section 2C:39-1f ... not because the device is proven presently inoperable, but because the instrument was never designed to fire a potentially-deadly missile." State v. Gantt, supra, 101 N.J. at 584-85, 503 A.2d 849. The Court also affirmed the holding in State v. Harmon, 203 N.J. Super. 216, 227, 496 A.2d 707 (App.Div. 1985), rev'd on other grounds, 104 N.J. 189, 516 A.2d 1047 (1986), that "the fact that a real gun is unloaded, in disrepair, or temporarily nonfunctional is irrelevant ... because those characteristics do not reflect on the weapon's original lethal design." State v. Gantt, supra, 101 N.J. at 585, 503 A.2d 849; accord State v. Williams, 232 N.J. Super. 414, 420, 557 A.2d 665 (App.Div.), certif. denied, 117 N.J. 633, 569 A.2d 1335 (1989) and certif. denied, 117 N.J. 634, 569 A.2d 1335 (1989); State v. Middleton, 143 N.J. Super. 18, 22-23, 362 A.2d 602 (App.Div. 1976), aff'd, 75 N.J. 47, 379 A.2d 453 (1977).
Our Supreme Court has only identified one exception to this general rule, that is, that a gun originally designed to be lethal may no longer qualify as a "firearm" if it has been so mutilated or destroyed that it cannot be called a gun. The Court in State v. Gantt, supra, explained:
[W]e prefer to state the issue not in terms of inferring "operability" from design, but in the more straightforward terms of merely inquiring whether an object designed to deliver deadly force has been so substantially altered as no longer to qualify as such.
* * * * * * * *
As was stated in State v. Morgan, supra:
It may become a question of fact as to whether a particular device possesses or retains the characteristics of a firearm as thus defined. Conceivably, although having initially possessed such characteristics, it may have lost them through mutilation, destruction or disassembly. Where there appears to be a legitimate dispute as to whether any such device possesses or retains the essential characteristics *130 * * * [t]hat question should be resolved as other questions of fact. [121 N.J. Super. at 219, 296 A.2d 539].
* * * * * * * *
The issue of so-called "inoperability" should enter the case only if it bears on the question of design  only if and when substantial evidence is introduced, from whatever source it may come, tending to show either that the object is of innocuous design, or that it has undergone such substantial alteration or mutilation that the instrument has completely and permanently lost the characteristics of a real gun. [101 N.J. at 589-90, 503 A.2d 849].
In meeting this burden of proof, the Court in State v. Gantt, supra, 101 N.J. at 589-90, 503 A.2d 849, stated that "an object's authentic design may be inferred from appearance or based on lay testimony, but in no case is it dependent upon empirical examination of the weapon." The Court further noted:
Inferring the authenticity of a weapon from its appearance or from the testimony of lay witnesses is entirely consistent with prior law in New Jersey and with a number of holdings from other jurisdictions. See State v. Magwood, 177 N.J. Super. 105, 107 [425 A.2d 695] (App.Div.), certif. denied, 87 N.J. 327 [434 A.2d 77] (1981) (defendant's prior-inconsistent statement to authorities that weapon was real was sufficient evidence to support armed-robbery conviction even though at trial he claimed weapon was a toy); State v. Cole, 154 N.J. Super. 138, 146 [381 A.2d 40] (App.Div. 1977), certif. denied, 78 N.J. 415 [396 A.2d 602] (1978) (testimony that witness heard a "click click" that sounded "like you pull a trigger back off a revolver" was sufficient to support conclusion that device was real gun); State v. Schultheis, supra, 113 N.J. Super. at 14 [272 A.2d 544] (testimony of young boy that he saw handle and barrel sufficient to conclude instrument was gun); see also Commonwealth v. Layton, 452 Pa. 495, 497, 307 A.2d 843, 844 (1973) (factfinder can infer operability from object that "looks like, feels like, sounds like or is like a firearm"); Couplin v. State, 37 Md. App. 567, 575-77, 378 A.2d 197, 202-03 (Ct.Spec.App. 1977) (non-recovery of handgun did not preclude conviction where credible evidence suggested weapon was authentic, even though state ostensibly has burden of proving use of a real gun); cf. State v. Zayas, 3 Conn. App. 289, 297-99, 489 A.2d 380, 385-86 (App.Ct.), certif. denied, 195 Conn. 803, 491 A.2d 1104 (1985) (in prosecution for carrying a pistol without a permit, jury could reasonably conclude pistol was operable and therefore a firearm even though when found the pistol was jammed and could not be discharged); Commonwealth v. Stallions, 9 Mass. App. 23, 24-25, 398 N.E.2d 738, 740-41 (App.Ct. 1980) (in prosecution for unlawfully carrying a firearm, jury could infer operability without the aid of expert testimony that weapon had been tested and found to be a real "firearm"). [State v. Gantt, supra, 101 N.J. at 590 n. 8, 503 A.2d 849].
There is ample evidence in this record to show that the shotgun used by defendant in the commission of these offenses was originally designed to be operable. The mere fact that it was missing *131 some pieces alone would not disqualify the shotgun as a firearm within the meaning of N.J.S.A. 2C:39-1f. The only question is whether the gun was so old and so deteriorated that it "completely and permanently lost the characteristics of a real gun." See State v. Gantt, supra, 101 N.J. at 590, 503 A.2d 849. We are satisfied that the jury could have found that the shotgun had not so lost its characteristics. The victim testified that he felt the barrel of a rifle or shotgun in his neck and defendant threatened to "blow his head off." He further testified that the kidnappers discussed selling "the gun" in New York, and that he overheard one of the kidnappers say that they should dispose of the gun because they would be "in deep trouble" if the police stopped them and they were caught with a gun. The victim further testified that his assailants subsequently drove to a residential area where defendant threw the gun in a garbage pail. The victim noted that he was able to see the gun because at one point, while he was seated in the back seat of the car, defendant sat in the front seat with the gun between his legs. Additionally, co-defendant Everett told the police that defendant brandished a 20 gauge shotgun on the night in question.
In our view, the evidence was sufficient for the jury to find beyond a reasonable doubt that the shotgun was a firearm within the meaning of N.J.S.A. 2C:39-1f. Clearly, "a rational inference from this evidence, tantamount to legal proof of the fact, is that the [shot]gun was capable of being fired." See State v. Schultheis, 113 N.J. Super. 11, 16, 272 A.2d 544 (App.Div. 1971), certif. denied, 58 N.J. 390, 277 A.2d 882 (1971). Defendant's convictions for the weapon offenses could rest on this inference. See State v. Cole, 154 N.J. Super. 138, 146, 381 A.2d 40 (App.Div. 1977), certif. denied, 78 N.J. 415, 396 A.2d 602 (1978); State v. Schultheis, supra, 113 N.J. Super. at 16, 272 A.2d 544. It was not necessary that the weapon be recovered or produced in court to find defendant guilty on these charges. Consequently, the trial court properly denied defendant's motion for a judgment of acquittal on these counts of the indictment at the close of the State's proofs. State v. Reyes, *132 50 N.J. 454, 458-59, 236 A.2d 385 (1967). See also State v. Perry, 124 N.J. 128, 180-81, 590 A.2d 624 (1991); State v. Franco, 153 N.J. Super. 428, 432-33, 379 A.2d 1292 (App.Div. 1977); State v. Gora, 148 N.J. Super. 582, 595-96, 372 A.2d 1335 (App.Div.), certif. denied, 74 N.J. 275, 377 A.2d 679 (1977); State v. South, 136 N.J. Super. 402, 410, 346 A.2d 437 (App.Div. 1975), certif. denied, 69 N.J. 387, 354 A.2d 315 (1976); State v. Gaines, 135 N.J. Super. 240, 247-48, 343 A.2d 118 (App.Div. 1975), aff'd o.b. 75 N.J. 83, 379 A.2d 1275 (1977). Moreover, the jury verdict was not a manifest denial of justice under the law. R. 2:10-1. See State v. Carter, 91 N.J. 86, 96, 449 A.2d 1280 (1982); State v. Sims, 65 N.J. 359, 373-74, 322 A.2d 809 (1974).
We also reject defendant's argument that he should not have been sentenced as a Graves Act offender because the shotgun was not a "firearm" within the meaning of N.J.S.A. 2C:39-1f and because the trial court never made the precise finding required by N.J.S.A. 2C:43-6d "that the weapon used or possessed was a firearm." First, we emphasize that in State v. Gantt, supra, 101 N.J. at 590, 503 A.2d 849, the Court explained that during the sentencing phase of a case, the factfinder must "determine whether the State has sustained its overall burden of establishing, by a preponderance of the evidence, that the instrument used or possessed was a `firearm' as defined." The Court stressed that there is no requirement that the trial court conduct a post-conviction inquiry into a weapon's operability. Id. at 585, 503 A.2d 849. "Such a rule would effectively eliminate the application of the Graves Act in all cases in which the defendant has discarded or secreted a weapon." Ibid. As we noted in State v. Harmon, supra, 203 N.J. Super. at 227, 496 A.2d 707, requiring proof of operability "would place an insurmountable burden on the prosecution in cases where the accused disposed of the weapon ..." The court must merely determine "whether the instrument was designed to deliver lethal force ..." State v. Gantt, supra, 101 N.J. at 585, 503 A.2d 849.
*133 Given the jury's finding that the shotgun involved was a firearm within the meaning of N.J.S.A. 2C:39-1f, the trial court was justified in holding that the firearm requirement for Graves Act sentencing had been satisfied. Ample credible evidence exists in the record to support such a finding. Moreover, the shotgun had not "undergone such substantial alteration or mutilation that the instrument [had] completely and permanently lost the characteristics of a real gun." See State v. Gantt, supra, 101 N.J. at 590, 503 A.2d 849.
Second, although the trial court did not expressly state that the shotgun used in the commission of the crime was a "firearm", it did find that "the shotgun was in fact a weapon under the guidelines of the statute." While the trial court may not have been as precise as it should have been in making its findings under the statute, the fact that the issue before the court at sentencing was whether defendant was subject to sentencing under the Graves Act convinces us that the trial court's use of the word "weapon" rather than the word "firearm" was purely inadvertent. In sum, sufficient evidence exists in this record to support the trial court's finding by a preponderance of the evidence that the shotgun used in the commission of the offenses warrants the imposition of a Graves Act sentence.

III.
Defendant also contends that the prosecutor's conduct deprived him of a fair trial, claiming, among other things, that the prosecutor had a duty to disclose Selig's exculpatory statements concerning the condition of the shotgun at his plea hearing. We disagree. It is well settled that "the suppression by the prosecutor of evidence favorable to an accused [which has been requested in pretrial discovery] violates due process where [it] is material either to guilt or to punishment, irrespective of the good faith or bad faith of the [State]." State v. Engel, 249 N.J. Super. 336, 389, 592 A.2d 572 (App.Div.), certif. denied, 130 N.J. 393, 614 A.2d 616 (1991) (quoting Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, *134 1196-97, 10 L.Ed.2d 215, 218 (1963)). In State v. Engel, supra, 249 N.J. Super. at 392, 592 A.2d 572, we explained that:
[W]e must determine whether the defense's discovery request was "general" or "specific." If the request was "general," as the State contends, the conviction must be reversed and a new trial ordered only if the "omitted evidence creates a reasonable doubt that did not otherwise exist." United States v. Agurs, 427 U.S. [97] at 112, 96 S.Ct. [2392] at 2403, 49 L.Ed. 2d [342] at 355 [(1976)]. If the request was "specific," as defendants argue, the "might have affected the outcome of the trial" standard is to be utilized, 427 U.S. at 104, 96 S.Ct. at 2397, 49 L.Ed.2d at 350 and, as stated in State v. Carter, 91 N.J. at 113, 449 A.2d 1280, we must determine whether the prosecutor's dereliction was harmless beyond a reasonable doubt.
Here, defendant failed to establish that he requested the prosecutor to produce the transcripts of Selig's plea hearing. Indeed, defendant admits that "the record is unclear as to exactly what request was made of the prosecutor by defense counsel," and that "defense counsel could have obtained [the transcript] independently." These transcripts were a matter of public record and if defendant were not aware of Selig's testimony concerning the condition of the shotgun, which seems highly unlikely, defendant could have obtained the information without the assistance of the prosecutor. Consequently, there was no prosecutorial misconduct by reason of the State's failure to produce Selig's plea hearing transcript.

IV.
Defendant further contends that he was denied effective assistance of counsel during his trial. Defendant alleges that the trial counsel failed to (1) adequately prepare for trial by interviewing possible defense witnesses; (2) object or move for a mistrial when the prosecutor pointed to him and called him by name at the Wade hearing; (3) object to the introduction of certain pictures depicting the victim in the trunk of the car; and (4) object to the trial court's upgrading the charge of possession of a shotgun with the purpose to use it unlawfully against the person of another under Count Two of the indictment.
In order to evaluate defendant's contentions, we must examine the United States Supreme Court's pronouncements in Strickland *135 v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, reh'g denied, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984), and United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). The United States Supreme Court in Strickland initially distinguished between two classes of assistance of counsel cases: cases "based on actual or constructive denial of the assistance of counsel altogether, as well as claims based on state interference with the ability of counsel to render effective assistance to the accused," and cases in which counsel "simply ... fail[ed] to render `adequate legal assistance'," or exhibited "actual ineffectiveness." Strickland v. Washington, supra, 466 U.S. at 683, 686, 104 S.Ct. at 2062, 2064, 80 L.Ed.2d at 690, 692. Defendant here claims the latter type of ineffective assistance of counsel.
The Strickland Court established a two-prong test for evaluating claims of "actual ineffectiveness" of counsel:
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable. [Id. at 687, 104 S.Ct. 2052, 80 L.Ed.2d at 693 (emphasis added)].
Under the first prong of that test, the "performance prong," the United States Supreme Court noted that the appropriate inquiry is "whether counsel's assistance was reasonable considering all the circumstances.... No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Id. at 688-89, 104 S.Ct. at 2065, 80 L.Ed.2d at 694.
With respect to the second prong of the Strickland test, the United States Supreme Court ruled that in "actual ineffectiveness" cases, prejudice must be proved; it is not presumed. Id. at 692-93, 104 S.Ct. at 2067, 80 L.Ed.2d at 696-97.

*136 An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution. [Id. at 691-92, 104 S.Ct. 2052, 80 L.Ed.2d at 696 (citation omitted)].
See also United States v. Cronic, supra, 466 U.S. at 658, 104 S.Ct. at 2046, 80 L.Ed.2d at 667 ("Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated.")
The New Jersey Supreme Court adopted the Strickland-Cronic test for demonstrating ineffective assistance of counsel under the New Jersey Constitution in State v. Fritz, 105 N.J. 42, 58, 519 A.2d 336 (1987). Recognizing the soundness and efficacy of both the substance and formulation of the federal constitutional standard, the New Jersey Supreme Court held that
under Article I, paragraph 10 of the State Constitution a criminal defendant is entitled to the assistance of reasonably competent counsel, and that if counsel's performance has been so deficient as to create a reasonable probability that these deficiencies materially contributed to defendant's conviction, the constitutional right will have been violated. [Ibid.].
Therefore, "a defendant whose counsel performed below a level of reasonable competence must show that `there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Id. at 60-61, 519 A.2d 336 (quoting Strickland v. Washington, supra, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698). More recently, the New Jersey Supreme Court reaffirmed its commitment to the Strickland-Cronic test in State v. Savage, 120 N.J. 594, 612-626, 577 A.2d 455 (1990).
It is perfectly plain from a review of this record that defendant failed to establish that trial counsel's performance was unreasonable or deficient. For example, trial counsel conducted extensive cross-examination of all witnesses at both the Wade and Sands hearings, as well as at trial. He argued zealously for the exclusion of the pretrial photographic identification. He moved for a judgment *137 of acquittal at the close of the State's evidence on the grounds that the shotgun was not a "real gun" and that the State failed to preserve all of the photographic line-ups that were shown to the victim. Trial counsel again pressed the issue of the shotgun qualifying as a "firearm" under the statute at sentencing, introducing Selig's plea hearing transcript for the trial court's consideration. In addition, trial counsel argued for concurrent sentences, citing the relevant case law, and argued for a lesser period of parole ineligibility. Given the overwhelming evidence of defendant's guilt, trial counsel provided defendant with competent representation.
Defendant has also failed to show that absent the claimed errors, the result of the proceeding would have been different. Defendant presented no evidence that Dorothy Riley, a cab driver who had encountered the three assailants earlier in the evening, would have testified that defendant was not one of the men she saw that night. In any event, such testimony would not have negated the positive and certain identification of defendant provided by the victim. In a similar vein, the fact that the prosecutor pointed to defendant and referred to him by name at sidebar during the Wade hearing before the victim gave an in-court identification would not have been grounds for a mistrial. The victim's pretrial photographic identification of defendant was reliable and provided more than ample evidence to place defendant at the scene of the crime.
Defendant argues that the admission into evidence of certain photographs taken of the victim reenacting his being locked in the trunk of his car was error to which defense counsel should have objected. We disagree. These photographs were relevant to prove that the victim was capable of fitting in the trunk of his car. Thus, the photographs were not only probative, but certainly not so unduly prejudicial that they should have been excluded under Evid.R. 4. See State v. Thompson, 59 N.J. 396, 421, 283 A.2d 513 (1971); State v. Ray, 43 N.J. 19, 33, 202 A.2d *138 425 (1964); State v. Smith, 32 N.J. 501, 525, 161 A.2d 520 (1960), cert. denied, 364 U.S. 936, 81 S.Ct. 383, 5 L.Ed.2d 367 (1961).
Finally, defendant contends that trial counsel should have objected to the trial court's decision to amend Count Two of the indictment to charge a violation of N.J.S.A. 2C:39-4a, rather than N.J.S.A. 2C:39-4d. Before charging the jury, the trial court invited counsel to present arguments regarding the error in the statutory reference to the offense charged in Count Two of the indictment. Defense counsel did not object to the amendment, even though it would subject defendant to a second, rather than third, degree offense. An objection on the part of the defense, however, would not have produced a different result in the proceeding. The trial court properly concluded that the error in the charge was merely typographical and that, despite the late discovery of the error, defendant would not be prejudiced if the jury were charged under N.J.S.A. 2C:39-4a, as that was the "more appropriate" offense.
R. 3:7-4 provides in relevant part:
The court may amend the indictment or accusation to correct an error in form or the description of the crime intended to be charged or to charge a lesser included offense provided that the amendment does not charge another or different offense from that alleged and the defendant will not be prejudiced thereby in his defense on the merits.
The trial court may not amend an indictment to charge a more serious offense, but it may correct errors or statutory references as long as the indictment was sufficient to inform defendant of the charge against him before trial. See State v. LeFurge, 101 N.J. 404, 414-17, 502 A.2d 35 (1986); State v. Bott, 53 N.J. 391, 402-03, 251 A.2d 115 (1969); State v. Koch, 161 N.J. Super. 63, 66, 390 A.2d 1192 (App.Div. 1978). Count Two of the indictment reads:
THE GRAND JURORS, of the State of New Jersey in and for the County of Ocean, upon their oaths PRESENT that MICHAEL ORLANDO, JOSEPH M. EVERETT and ROCCO A. SELIG, on or about February 16, 1989, in the Township of Dover, in the County of Ocean aforesaid, and within the jurisdiction of this Court, did have in their possession a shotgun, with the purpose to use it unlawfully against CHRISTOS VENIDIS, contrary to the provisions of NJS *139 2C:39-4.d, and against the peace of this State, the Government and dignity of the same. [Emphasis added].
N.J.S.A. 2C:39-4d, however, speaks of possession of "any weapon, except a firearm." Because the indictment refers to a "shotgun", which falls within the definition of "firearm", see N.J.S.A. 2C:39-1f, the Grand Jury undoubtedly intended to charge defendant with N.J.S.A. 2C:39-4a, which prohibits possession of "any firearm" for unlawful purposes. Thus, the trial court properly amended Count Two of the indictment to include the appropriate statutory reference on the crime charged.
In sum, defendant has not shown how trial counsel's conduct prejudiced him within the meaning of the effective assistance of counsel standard. The claimed errors do not overcome the presumption that trial counsel's conduct was within the wide range of acceptable, reasonable professional assistance nor do they demonstrate prejudice to defendant sufficient to undermine confidence in the outcome of this trial. Moreover, and of equal importance, thorough study of the record shows that defendant was provided a vigorous, viable defense and that his trial counsel's performance was not unreasonable or inadequate. Defense counsel was conscientious and zealous in the representation of this defendant. The record is replete with objections, arguments and motions made by trial counsel on defendant's behalf. Trial counsel was prepared and had a thorough grasp of the facts and the legal issues. The record does not support or even given rise to a fair inference that trial counsel's performance was in any way inadequate or below a level of reasonable competence.
Finally, even assuming that trial counsel's performance could in some way be characterized as deficient, which we do not find, his conduct was not "so deficient as to create a reasonable probability that these deficiencies materially contributed to defendant's conviction...." State v. Fritz, supra, 105 N.J. at 58, 519 A.2d 336; see also Strickland v. Washington, supra, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. In short, defendant has failed to meet the heavy burden of proof that but for his trial counsel's performance the result would have been any different.

*140 V.
We are satisfied that, with the exception of the trial court's failure to assign the parole ineligibility term to specific sentences or specific counts of the indictment, the sentences imposed upon defendant were neither illegal nor excessive. Careful review of the record shows that the sentences complied with the provisions of the New Jersey Code of Criminal Justice and resulted from the trial court's thorough and careful consideration of the aggravating factors balanced against the absence of any mitigating factors. The trial court's findings in this regard are amply supported by the record. The totality of the aggravating factors substantially outweighed the non-existing mitigating factors and, thus, justified the sentence imposed. Moreover, a parole ineligibility term was mandated by the Graves Act, N.J.S.A. 2C:43-6c.
We are also satisfied that the trial court properly imposed consecutive sentences upon defendant for his convictions for armed robbery under Count Four and kidnapping under Count Six and that the imposition of such sentences did not offend the principles discussed in State v. Yarbough, 100 N.J. 627, 498 A.2d 1239 (1985), cert. denied, 475 U.S. 1014, 106 S.Ct. 1193, 89 L.Ed.2d 308 (1986). The armed robbery and kidnapping were entirely independent of each other as they "involve[d] separate and distinct elements which do not merge." See State v. Mosch, 214 N.J. Super. 457, 465, 519 A.2d 937 (App.Div. 1986), certif. denied, 107 N.J. 131, 526 A.2d 197 (1987); see also State v. Perry, 124 N.J. 128, 177, 590 A.2d 624 (1991). The trial court adequately set forth the reasons for imposing consecutive sentences for these convictions. Although the explanation was somewhat brief, it was sufficient. Furthermore, the imposition of a consecutive five year term for defendant's parole violation did not constitute a mistaken exercise of the trial court's sentencing discretion. Defendant's consecutive sentences reflect an overall evaluation of the circumstances of the offenses and do not violate the notions for fairness that are imbedded in the Code's sentencing provisions.
*141 In sum, except for the failure of the trial court to assign the parole ineligibility term to specific sentences or specific counts of the indictment, we are satisfied that the overall sentence imposed upon defendant is unassailable. The sentence is neither manifestly excessive nor unduly punitive. Furthermore, it does not represent a miscarriage of justice or shock the judicial conscience. State v. O'Donnell, 117 N.J. 210, 215-16, 564 A.2d 1202 (1989); State v. Jarbath, 114 N.J. 394, 401, 555 A.2d 559 (1989); State v. Ghertler, 114 N.J. 383, 387-88, 393-94, 555 A.2d 553 (1989); State v. Roth, 95 N.J. 334, 364-65, 471 A.2d 370 (1984).

VI.
Finally, although defendant does not raise the issue, the trial court improperly imposed the parole ineligibility term on the aggregate sentence, rather than on specific sentences or specific counts of the indictment. See N.J.S.A. 2C:43-6b and N.J.S.A. 2C:43-7b. In State v. Cianci, 18 N.J. 191, 194, 113 A.2d 176 (1955), cert. denied, 350 U.S. 1000, 76 S.Ct. 555, 100 L.Ed. 864 (1956) and cert. denied 353 U.S. 940, 77 S.Ct. 819, 1 L.Ed.2d 763 (1957), our Supreme Court held that a defendant must be sentenced separately on each count of the indictment. Nothing in the Code has changed this fundamental pre-Code law. Moreover, this principle has been extended to assigning a parole ineligibility term to a specific sentence or count of the indictment. State v. Subin, 222 N.J. Super. 227, 241, 536 A.2d 758 (App.Div.), certif. denied, 111 N.J. 580, 546 A.2d 506 (1988); State v. Jones, 213 N.J. Super. 562, 571, 517 A.2d 1219 (App.Div. 1986); State v. Alevras, 213 N.J. Super. 331, 342, 517 A.2d 460 (App.Div. 1986); Cf. State v. Green, 129 N.J. Super. 157, 167, 322 A.2d 495 (App.Div. 1974). Thus, the failure of the trial court to assign the parole ineligibility term to specific sentences or specific counts of the indictment constituted error. We therefore vacate the fifteen year parole ineligibility term imposed as part of defendant's sentence and remand the matter to the trial court with direction that it assign *142 the parole ineligibility term to specific sentences or specific counts of the indictment.

VII.
Accordingly, except to vacate the parole ineligibility term and to remand the matter to the trial court so that the error in the parole ineligibility term may be corrected consistent with this opinion, the judgment of conviction and order for commitment under review are affirmed. We do not retain jurisdiction.