**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0944-15T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ERIC SHELTON,

    Defendant-Appellant.

_____

Submitted February 7, 2017 — Decided March 17, 2017

Before Judges Fasciale and Gilson.

On appeal from the Superior Court of New
Jersey, Law Division, Essex County, Indictment
No. 13-04-00935.

Spencer & Associates, L.L.C., attorneys for
appellant (Remi L. Spencer, of counsel and on
the brief).

Carolyn A. Murray, Acting Essex County
Prosecutor, attorney for respondent (Maria I.
Guerrero, Special Deputy Attorney
General/Acting Assistant Prosecutor, on the
brief).

PER CURIAM

    Following the denial of his motion to dismiss one of the

charges against him, defendant Eric Shelton pled guilty to second-

degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b). Defendant was sentenced to five years in prison with three years of parole ineligibility. He now appeals the denial of his motion to dismiss the count of the indictment charging him with unlawful possession of a handgun. We affirm.

I.

Defendant was walking on a street when a police officer stopped him believing that defendant matched the description of a burglary suspect. As part of the investigatory stop, the officer frisked defendant and felt a bulge in defendant's front pants pocket. Defendant told the officer that he had an unloaded gun. As the officer was removing the gun, the defendant struck the officer and ran away. Ultimately, defendant was apprehended and arrested.

A grand jury indicted defendant on three counts: count one, second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b); count two, fourth-degree aggravated assault, N.J.S.A. 2C:12-1(b)(5)(a); and count three, fourth-degree resisting arrest, N.J.S.A. 2C:29-2(a).

Defendant moved to dismiss count one of the indictment, contending that the handgun was inoperable, that it had lost the characteristics of its original design and, therefore, it was not a handgun. At a hearing on the motion, the State called Lieutenant

Peter Carbo, who is the commanding officer of the Essex County Sheriff's Department's ballistic unit. It was stipulated that Lieutenant Carbo was an expert in ballistics and firearms.

Lieutenant Carbo had prepared two reports on the handgun found on defendant. Both reports concluded that the handgun was inoperable in its current condition because "[a]pproximately one third of the barrel is missing from the forcing cone area forward rendering this firearm incapable of firing a projectile through the barrel."

At the hearing, Lieutenant Carbo testified that the handgun was a forehand model break-top .32 caliber revolver, manufactured by Ira Johnson. He explained that the manufacturer had gone out of business in 1916, and he opined that this particular revolver was made "around 1907."

Lieutenant Carbo confirmed the conclusions of his written reports that the handgun was not operable in its current condition. He went on to testify, however, that the revolver "could be made readily -- readily operable." While acknowledging that his lab did not have a matching barrel, Lieutenant Carbo explained that such barrels are available for purchase and the barrel could be replaced. Lieutenant Carbo then opined that if the barrel were replaced, the revolver would be able to fire a bullet. Thus, the

Lieutenant opined that the revolver was not permanently inoperable and it was capable of being made operable.

Based on the testimony of Lieutenant Carbo, the trial court denied defendant's motion to dismiss the count of the indictment that charged defendant with unlawful possession of a handgun. Relying on our Supreme Court's decision in State v. Gantt, 101 N.J. 573 (1986), and our decision in State v. Orlando, 269 N.J. Super. 116 (App. Div. 1993), certif. denied, 136 N.J. 30 (1994), the trial court held that the revolver needed to be originally designed to fire a bullet, ball or projectile. The court also held that the only exception to the original design requirement was if the gun was so mutilated that it had lost its ability to function as a gun. The trial court then found that Lieutenant Carbo had testified that the revolver was originally designed to fire a bullet and that it was still able to function as a gun if the barrel was replaced.

As previously noted, defendant thereafter pled guilty to count one, admitting that he possessed a handgun without a permit. He now appeals the denial of his motion to dismiss count one of the indictment.

II.

On appeal, defendant argues:

I.  THIS COURT SHOULD REVERSE THE TRIAL COURT'S DECISION AND DISMISS COUNT I OF THE INDICTMENT BECAUSE THE STATE'S EVIDENCE FAILED TO ESTABLISH THAT MR. SHELTON POSSESSED A WEAPON

A.  The Applicable Legal Standard

B.  A Handgun that is Not Operable and Not Capable of Being Made Operable Does Not Meet the Statute's Definition of a Firearm or a Weapon, and, Therefore, Precludes Prosecution of the Unlawful Possession of a Weapon Pursuant to N.J.S.A. 2C:39-5(b)

C.  The Handgun Had Lost the Characteristics of its Original Design and Manufacture, and, Therefore, it is Not a Handgun

Our review of the trial judge's decision to dismiss an indictment is guided by established legal principles. "[T]he decision whether to dismiss an indictment lies within the discretion of the trial court, and that exercise of discretionary authority ordinarily will not be disturbed on appeal unless it has been clearly abused." State v. Eldakroury, 439 N.J. Super. 304, 309 (App. Div.) (alteration in original) (quoting State v. Hogan, 144 N.J. 216, 229 (1996)), certif. denied, 222 N.J. 16 (2015). Our review of a trial court's interpretation of the law, however, is de novo. State v. Grate, 220 N.J. 317, 329-30 (2015).

A trial court should not dismiss an indictment except on the clearest and plainest grounds where it is "manifestly deficient

or palpably defective."  State v. Saavedra, 433 N.J. Super. 501, 514 (App. Div. 2013) (quoting Hogan, supra, 144 N.J. at 228-29), aff'd, 222 N.J. 39 (2015).  When reviewing a motion to dismiss, the court must construe the facts in the light most favorable to the State.  State v. Fleischman, 383 N.J. Super. 396, 398 (App. Div. 2006), aff'd, 189 N.J. 539 (2007).  "As long as an indictment alleges all of the essential facts of the crime, the charge is deemed sufficiently stated."  State v. Schenkolewski, 301 N.J. Super. 115, 137 (App. Div.), certif. denied, 151 N.J. 77 (1997). We have explained that "[t]he quantum of this evidence . . . need not be great."  Ibid.

Here, defendant was charged with unlawful possession of a handgun in violation of N.J.S.A. 2C:39-5(b).  That statute states:

> Any person who knowingly has in his possession any handgun, including any antique handgun, without first having obtained a permit to carry the same . . . is guilty of a crime . . . .[1]

To convict defendant, the State must prove three elements: (1) there was a handgun; (2) defendant knowingly possessed the handgun; and (3) defendant did not have a permit to possess such a weapon.

---

[1] Defendant was found to be in possession of the handgun in October 2012.  N.J.S.A. 2C:39-5 was amended effective August 8, 2013.  The language we quoted is from the statute in effect on October 12, 2012.

Model Jury Charge (Criminal), "Unlawful Possession of a Handgun" (2011).

On this appeal, we focus on the first element; that is, whether the device found on defendant was a handgun. A handgun is defined as "any pistol, revolver or other firearm originally designed or manufactured to be fired by the use of a single hand." N.J.S.A. 2C:39-1(k). Focusing on the plain language of that definition, there is no requirement that the handgun be operable. Instead, the definition focuses on the original design and that the gun was capable of being fired by the use of a single hand.

Our Supreme Court and this court have reviewed statutory provisions concerning handguns and firearms in the context of imposing mandatory terms under the Graves Act, N.J.S.A. 2C:43-6(c). See Gantt, supra, 101 N.J. 573; Orlando, supra, 269 N.J. Super. 116; see also State v. Harmon, 203 N.J. Super. 216, 227 (App. Div. 1985), rev'd on other grounds, 104 N.J. 189 (1986). In all of those cases, both the Supreme Court and our court have held that there is no requirement that a weapon be operable to meet the definition of a firearm or a handgun.

For example, in Gantt, the Supreme Court held that a firearm is determined in terms of its original design. The Court went on to identify one exception to the general design requirement. That exception applies when a gun, originally designed to be lethal,

is so mutilated or destroyed that it can no longer be called a gun. Thus, the Court explained, "we prefer to state the issue not in terms of inferring 'operability' from design, but in the more straightforward terms of merely inquiring whether an object designed to deliver deadly force has been so substantially altered as no longer to qualify as such." Gantt, supra, 101 N.J. at 589.

The Court then went on to quote our decision in State v. Morgan:

> It may become a question of fact as to whether a particular device possesses or retains the characteristics of a firearm as thus defined. Conceivably, although having initially possessed such characteristics, it may have lost them through mutilation, destruction or disassembly. Where there appears to be a legitimate dispute as to whether any such device possesses or retains the essential characteristics . . . [t]hat question should be resolved as any other question of fact.
>
> [Ibid. (alterations in original) (quoting State v. Morgan, 121 N.J. Super. 217, 219 (App. Div. 1972)).]
>
> The issue of so-called "inoperability" should enter the case only if it bears on the question of design—only if and when substantial evidence is introduced, from whatever source it may come, tending to show either that the object is of innocuous design, or that it has undergone such substantial alteration or mutilation that the instrument has completely and permanently lost the characteristics of a real gun.
>
> [Id. at 590.]

Consistent with Gantt, we have held that a gun used by a defendant to commit armed robbery was a firearm even when the gun was inoperable because the barrel had been stuffed and the firing pin had been removed. Orlando, supra, 269 N.J. Super. at 127-28. We noted that the weapon need not be operable, but only be proven to be a firearm based on the original design. Id. at 130-131.

In summary, both the plain language of the statutory definition of a handgun and the cases interpreting firearms, which includes handguns, define a handgun by its original design. Thus, there is no requirement that the weapon be operable. The one exception to the design requirement is that the gun still retains the characteristics of a gun. Thus, a fact question can arise if the gun is so mutilated, destroyed, or disassembled that it no longer retains the essential characteristics of a gun.

Here, there was sufficient evidence for the motion judge to find that the handgun found on defendant was originally designed to be operable. Lieutenant Carbo, an expert in ballistics and firearms, testified that the gun was originally designed to act as a revolver. He also testified that while the gun was currently inoperable, it could be made operable by replacing the barrel. Those facts were sufficient to satisfy the State's burden at a motion to dismiss.

Defendant makes two related arguments. First, he contends that a handgun that is not operable and not capable of being made operable does not meet the statutory definition of a firearm or weapon. First, it is important to note that defendant was indicted and pled guilty to unlawful possession of a handgun. As already pointed out, a handgun is simply defined as "any pistol, revolver or other firearm originally designed or manufactured to be fired by the use of a single hand." N.J.S.A. 2C:39-1(k). The definitions of firearms and weapons are helpful in construing the meaning of a handgun, but they do not control. In Gantt, the Supreme Court explained that firearms included within its definition a handgun. Gantt, supra, 101 N.J. at 584. The Court went on to reject the argument that handgun was modified by the language "or any gun . . . in the nature of a weapon from which may be fired or ejected any . . . missile or bullet." Ibid. (alterations in original) (quoting N.J.S.A. 2C:39-1(f)). The Court then explained that the "operative word in the clause is the disjunctive 'or,' and as such, it does not modify" handgun, which is defined in terms of its original design. Ibid.

Defendant's arguments concerning whether the handgun was capable of being made operable or whether it had lost the characteristics of its original design, is a fact question that was never reached in the context of this case. Lieutenant Carbo

testified that the handgun found on defendant was capable of being made operable and was not permanently inoperable. That testimony was sufficient to satisfy the State's burden on a motion to dismiss. If defendant had wanted to contest whether this particular handgun was capable of being made operable or whether it had lost the characteristics of its original design, defendant would have had to present that case to a jury, who would have acted as the fact finder on that issue. See Gantt, supra, 101 N.J. at 588. Defendant, however, elected to plead guilty after the denial of his motion to dismiss.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION